# THE SUPREME COURT

OF

## THE STATE OF MISSOURI,

### OCTOBER TERM, 1871, AT ST. LOUIS.

[CONTINUED FROM VOL. XLVIII.]

———•———

STATE OF MISSOURI, TO USE OF JAMES JUDGE, Respondent, *v.* FREDERICK W. GATZWEILER *et al.*, Appellants.

1. *United States constitution — State retrospective laws not forbidden by, when.* — The constitution of the United States does not prohibit a State from enacting retrospective laws or ordinances of a civil nature which take away a right of action or divest rights invested in an individual, if these laws do not impair the obligation of a contract nor divest settled rights of property.
2. *Oblivion and indemnity, statute of — Plea raising — What necessary to be shown under.* — A defendant pleading that the acts charged against him were done in pursuance of orders received from United States military tribunals or officers, in accordance with section 4, art. XI, of the State constitution, need not show that the authority of the tribunal or officer was rightful and legal in the particular matter in question.
3. *Sheriff — Bond — Action on — Money paid over under military orders — United States constitution — Impairing obligation of contract.* — A sheriff is not a mere bailee of money coming into his hands, who is exonerated from liability by the exercise of ordinary care and diligence. His duty is to pay over the money to those legally entitled thereto, and his bond has the force of a contract that he will not fail upon any account to make the payment. Hence, section 4 of art. XI, of the State constitution, in so far as it releases him from such liability, even where the fund was misapplied in pursuance

2—XLIX.

of military orders, is in conflict with the constitution of the United States as impairing the obligation of a contract.

4. *Sheriff — Bond — Action on — Statute of limitations commences running, when — Act of Congress — Jurisdiction of Federal courts.* — A sheriff who, during the late rebellion, and subsequent to March, 1863, misapplied money in his hands, under a military order of the United States, will be protected against any action therefor in the courts of this State, brought more than two years after the date of his return showing the execution to have been satisfied. The Congressional act of limitations (12 U. S. Stat. 757) is binding on State as well as Federal courts.

### *Appeal from Warren Circuit Court.*

*T. T. Bruere,* for appellants.

Defendant is protected by section 4, article XI, of the State constitution, and the defense is sufficiently pleaded. If, whenever this section is invoked, defendant must show the legality of the military order under which he acted, the section would be nugatory. (Clark v. Dick, 9 Am. Law Reg. 742.) This court has held that the circumstances under which the order was issued, such as the pressure of military necessity, or at whose instance it issued, need not be shown. (Drehman v. Stifel, 41 Mo. 203.) The existence of the urgency or military necessity will be conclusively presumed from the order itself. The only facts required to be proved by defendant are: first, that the military order existed; second, that those issuing it were then clothed by the United States with military authority over Missouri. (Clark v. Dick, *supra.*)

It is immaterial, under the section referred to, that defendant was a private citizen. (See same case.)

That section is not a bill of attainder nor an *ex post facto* law. (Drehman v. Stifel, 8 Wall. 595.)

Nor is the law void as being retrospective. Retrospective laws are not void for that reason, unless they are made so by express constitutional provisions. Now this is not a statute law, but a part of the constitution of Missouri itself — a part of the fundamental law of the State, which cannot by implication be nullified by another part of that same instrument prohibiting the Legislature from passing retrospective laws. (Const., art. I, § 28.)

Section 4 of article XI did not impair the obligation of defendant's contract as contained in his sheriff's bond. (Drehman v. Stifel, 8 Wall. 601.) The obligation of the bond was not to pay over the $10,000 to Judge, but to faithfully discharge his official duties. The "duties" meant were certainly not those imposed on him at the time the bond was executed, otherwise they could not afterward be altered by the Legislature. Yet undoubtedly that body might require the sheriff to pay the balance in his hands into court, or into the county treasury; or the State convention could direct him to pay it over in obedience to military orders. If there was no legal authority for the military order, defendant has his remedy against the government.

This suit is barred by the Congressional statute of limitations. (12 U. S. Stat. 755, § 7.)

The action was brought more than two years after the execution was returned satisfied. From that date, and not the time of demand, the statute began to run. (See Clark v. Dick, *supra*, and Bigelow v. Forrest, 9 Wall. 348–9.) And the operation of this act is not confined to the case when arising in the Federal court, but affects it in a State court as well. (See Mayor of Nashville v. Cooper, 6 Wall. 247; Clark v. Dick, *supra*.)

Defendant was a mere bailee, and responsible only for ordinary care and diligence. He was certainly not liable if the money was taken from him by irresistible force, and under threats of his personal liberty.

*E. A. Lewis*, for respondent.

I. By the terms of his bond, defendant in effect contracted to pay over to plaintiff any surplus in his hands after satisfying the execution; and section 4, art. XI, of the State constitution, in so far as it released defendant from that obligation, "impaired the obligation" of his contract. This section in the case at bar would not merely modify plaintiff's remedy, but would take it away altogether.

In the case of Drehman v. Stifel, 8 Wall. 595, this section was permitted to govern, solely because it did not bar plaintiff from his right to recover property rights, but only from a specific

form of action. It was said that the result might be different if "by giving effect to the provision the party was precluded from asserting a title or enforcing a right." That suit was for the recovery of property which plaintiff charged to have been tortiously taken from him, and the action was not for the enforcement of a contract, but a preventive remedy for a forcible and wrongful ousting.

In this case the action is brought specifically for the enforcement of a contract, under which the plaintiff had acquired vested rights at the time of the adoption of the constitutional provision which is here arrayed against him.

II. Even supposing the provision to be constitutional, it has no application here. Defendant had no military authority; nor, properly speaking, was the act done by him under "orders received by him" from one vested with such authority. A private soldier may receive an order from his superior officer. But the law could not have been intended to apply to any unauthorized direction given by a military officer to a person not subject to his control, and under no obligation, military or civil, to obey him. Such a construction would give perpetual license to the commission of all the crimes in the calendar. The defendant stood in no relation of subordination to the military officer whose dictates he chose to obey. But further, under this law the person who gives the order must also have "authority vested in him by the government of the United States, or that of this State, to do such act." The provost marshal never was vested with authority from either government to deprive Judge of his lawful property. The whole proceedings of the military commission under which he acted were void, and could not validate any act, order or sentence of theirs which had no other "authority" to sustain it.

III. The Congressional statute of limitation has no application; as demand was made not far from January 1, 1867, at which time the cause of action accrued, and suit was brought April 23d of that year. (Kivett v. Massey, 63 N. C. 240; Pope v. Hays, 1 Mo. 450.)

State of Missouri, to use of Judge, v. Gatzweiler et al.

*H. C. Lackland*, for respondent.

The "authority" referred to in section 4, art. XI, is legal military authority, such as the government possessed under the constitution and laws to clothe its officers with. The provost marshal had no authority whatever over the sheriff, who was a mere civil officer and not under his control. The case of Drehman v. Stifel, and every case where section 4 has come up, were cases where the acts complained of were military acts and done by persons in the military service, or subject to military order. This case does not come within the principle of those cases. (See Smith v. Owens, 42 Mo. 508 ; Edmondson v. Kite, 43 Mo. 176.) The case of Wellman v. Wickerman, 44 Mo. 484, went off on a question of eminent domain.

The Congressional act of limitations was never designed to establish a rule in State courts limiting suits on sheriffs' bonds.

If the sheriff were overpowered by the military force, he ought to have gone to prison rather than to have paid the money. Robbery or theft is no defense to a suit on a sheriff's bond for money collected on execution. (United States v. Prescott *et al.*, 3 How. 578 ; Thompson v. Board of Trustees, 30 Ill. 99 ; Commonwealth v. Cowley, 3 Penn. St. 372 ; Haller v. State, 22 Ind. 125.) (Counsel argued other points embraced in the brief of E. A. Lewis.)

WAGNER, Judge, delivered the opinion of the court.

This was an action on the official bond of defendant as sheriff of St. Charles county. The petition averred that an execution was placed in his hands against the plaintiff from the St. Louis Circuit Court, on a judgment rendered May 5, 1864, for the sum of $15,000, with interest and costs ; that upon a sale of the plaintiff's property by the defendant there remained in his hands the sum of $5,695.40, after satisfaction of the execution, which he failed and refused to pay over to plaintiff on his demand as required by law. Judgment was therefore asked for the penalty of the bond, with an assessment of damages, etc.

Defendant's answer admitted the execution of the bond sued

on. It also admitted the execution, sale and receipt of the proceeds, as stated in the petition, but set up as a special defense that he (defendant) was ready and willing to pay over the alleged surplus to plaintiff at the proper time, but was restrained and prevented from doing so by orders from the provost marshal general of the department of Missouri, who was vested with military authority by the government of the United States over the State of Missouri; that by order of said provost marshal he was compelled to pay over the said surplus to one Arnold Krekel, in part satisfaction of a fine of $10,000 which had been adjudged against the plaintiff by a military commission before whom he was tried.

Defendant therefore pleaded section 4 of art. xi of the State constitution, and the convention ordinance of March 17, 1865, in bar of the suit. He further pleaded and relied on section 7 of an act of Congress, approved March 3, 1863, providing a limitation as therein stated in certain cases. It was also set up and pleaded that the defendant was compelled by overpowering force and under threats to his personal liberty to pay the said money over to Krekel as before alleged.

To all of the above part of the answer the defendant demurred on the ground that it constituted no defense to the action. The demurrer was sustained by the court, and the defendant excepted. The trial then proceeded on the other issues raised by the answer and reply, involving mainly the fact or sufficiency of the plaintiff's demand before commencing this action, and judgment was finally given for the plaintiff.

Upon the part of the defendant it is insisted that the constitutional provision set up in the answer as a bar, affords a complete defense and amounts to a full protection for the defendant, while the plaintiff's counsel take the ground that the case is not within the terms of the section of the constitution relied on, and therefore is unavailing for the purposes for which it is pleaded.

The section in the constitution referred to is as follows: "No person shall be prosecuted in any civil action or criminal proceeding for or on account of any act by him done, performed or executed after the first day of January, 1861, by virtue of

military authority vested in him by the government of the United States, or that of this State, to do such act, or in pursuance of orders received by him from any person vested with such authority; and if any action or proceeding shall have heretofore been, or shall be hereafter, instituted against any person for the doing of any such act, the defendant may plead this section in bar thereof." (Const., art. XI, § 4.)

This provision was before this court in the case of Drehman v. Stifel, 41 Mo. 184, and it was there held that it did not conflict with the constitution of the United States; that it was intended as an act of indemnity, oblivion and pardon: of indemnity as far as it affected civil actions, and oblivion as it affected criminal proceedings, and that it was not in opposition to the bill of rights.

The constitution of the United States does not prohibit a State from enacting retrospective laws or ordinances of a civil nature, which take away a right of action, or divest rights invested in an individual, if these laws do not impair the obligation of a contract nor divest settled rights of property. Drehman v. Stifel was taken by appeal to the Supreme Court of the United States, and the decision of this court was sustained throughout, but it was intimated in the concluding paragraph of the opinion that the case might be different if by giving effect to the constitutional provision the party was precluded from asserting a title and enforcing a right.

The objection is raised on behalf of the plaintiff that the defendant is in no situation to take advantage of the constitutional immunity, because it is not shown that he was in the military service, nor that the court-martial that passed sentence on the plaintiff had jurisdiction of the case they attempted to try. But if the defendant is required to show the legality of the military court and the righteousness of the authority of the orders issued by the provost marshal general, then the constitution simply amounts to no protection at all; for without this constitutional provision, if it could be shown that the act was justified or authorized by competent and lawful authority, then certainly no action would lie.

As to defendant's being a private citizen, no distinction is drawn. The section uses the broad and comprehensive language, "no person shall be prosecuted in any civil action," etc. It is well known, and the framers of the constitution were aware of the fact, that in the violent struggle that was raging in Missouri during the civil war, and especially after the proclamation of martial law, the military arm was accustomed to avail itself of the service of civilians, and often issued orders for them to execute. They acted in obedience to the military power, and are as much within the meaning of the constitution as if they had been actually mustered in the service.

The averment in this answer is sufficient to bring defendant's case within the constitution. It states that he acted in accordance with orders from the provost marshal general of the department of Missouri, who was vested with military authority by the government of the United States over the State of Missouri. The parties who were engaged in the conflict at that time did not stop to argue about technicalities, nor scrutinize very closely whether orders were in strict conformity with law.

These facts were well known, and it was intended that the actors should have indemnity and repose after the struggle was ended and peace restored. The case of Clark v. Dick, in the United States Circuit Court for the district of Missouri (9 Am. Law Reg., N. S., 739), is in point. The action was originally commenced in the State court and afterward removed to the Circuit Court. It was trespass, alleged to have been committed in the city of St. Louis, in January, 1862. The defendant was one of a committee who revised compulsory assessments or contributions made against different individuals, the plaintiff being one, by order of the general of the army in command of the department of this State.

So far as the record shows, the defendant was at that time a private citizen, and among other pleas he set up the section alluded to in the State constitution. The court decided that the facts pleaded brought the case within the above-mentioned section of the constitution of this State, under which they were a good defense; that section 4, art. XI, which in substance exempts per-

sons from liability for acts done during the recent civil war by virtue of military authority vested in them by the government of the United States, or in pursuance of an order received from any person vested with such authority, is valid, and protects from prosecution or action all who can show for their acts the authorization of a military officer acting under the commander-in-chief of the army of the United States.

Judge Miller delivered the opinion of the court, in which he said: "The defendant thus acted in pursuance of orders from one vested with full military authority, and unless we are to go into the question whether such authority can possibly exist in this country, we must concede that the case is one intended to be provided for by this section. If the defendant is required to show that the authority of the military commander was a rightful and legal authority in the particular matter in question, then the provision in the Missouri constitution is useless. For it must be conceded in all courts that an act justified by lawful and competent authority in the particular case cannot be the foundation of an action. The clause we are considering was not intended for such a case. It was not needed. But the framers of that instrument were aware that many acts of violence had been done by the military and by those subject to military orders, for which it might be difficult to find legal and technical justification, but which were thought to be necessary and proper to maintain the national supremacy. They therefore intended to provide for those cases. And while they did not pretend to give protection to lawless violence, committed by persons without orders from any competent authority or any recognized military officers, they did intend to shield from prosecution all who could show for their acts the authorization of a military officer, acting under the commander-in-chief of the army of the United States. The wisdom of this ordinance has lost none of its force by the lapse of time. As a provision for the repose and quiet of the community it could nowhere be more useful than in Missouri."

I think, therefore, that the defendant stands in an attitude to avail himself of the benefits of the constitutional clause, provided

the order did not impair the obligation of a contract. On this question my mind is decidedly in favor of the plaintiff.

The defendant's bond was conditioned to discharge the duties of the office of sheriff according to law. It is well established that a public officer who is required to give bond for the performance of his duties, and the proper payment of moneys that may come into his hands as such officer, is not a mere bailee of the money, exonerated by the exercise of ordinary care and diligence. His liability is fixed by his bond, and no parting with the money, or loss either by theft, robbery or otherwise, will release him from his obligation to make payment. (United States v. Prescott, 3 How. 578 ; Muzzy v. Shattuck, 1 Denio, 233 ; Hancock v. Hazard, 12 Cush. 112 ; Commonwealth v. Comly, 3 Penn. St. 372 ; State v. Harper, 6 Ohio St. 607; Halbert v. The State, 22 Ind. 125.) The duty of the sheriff is to pay over money coming into his hands to those legally entitled thereto, and his bond is the contract that he will not fail upon any account to do this act.

In my opinion this is a contract within the meaning of the constitution of the United States, which the States are prohibited to impair, and any law or ordinance of a State which seeks to release the officer from his obligation should be treated as a nullity.

This brings us to the last question in the case, and that is the statute of limitations passed by Congress (12 Stat. at Large, 757), and which is pleaded as a defense. The seventh section of the act provides. "that no suit or prosecution, civil or criminal, shall be maintained for any arrest or imprisonment made, or other trespasses or wrongs done or committed, or act omitted to be done, at any time during the present rebellion, by virtue or under color of any authority derived from or exercised by or under the President of the United States, or by or under any act of Congress, unless the same shall have been commenced within two years next after such arrest, imprisonment, trespass or wrong may have been done or committed, or act may have been omitted to be done."

The objection made to this plea is that it is inapplicable to a case originated and tried in a State court, and that Congress has

no power to pass a statute of limitations binding on the State courts.

In the case of Cooper v. Mayor of Nashville, 6 Wall. 247, the question was fully considered, and it was established that Congress had the constitutional right to provide for the trial of this class of cases in the national courts. Judge Miller, in speaking on this point in Clark v. Dick, *supra*, declares that if Congress has the right to determine in what courts such questions must be tried, it must necessarily have the power to regulate the remedy, including the right to prescribe the time within which the suit may be brought. He further says: "Nor is the objection sound that in such cases the action, if tried in the State courts, would be subject to the law of limitations prescribed by the States, while in the Federal court a different rule would prevail. For the act of Congress, by its terms, applies to all cases of the character described in the statute, and we see no reason to limit its application to the Federal courts. If Congress has a right to legislate on this subject, it has the right to make that legislation the law of all courts into which such a case may come, and we think they have done this in the statute under consideration."

But the position is further assumed that even admitting that the statute applies, still, under our law, it does not begin to run till demand made ; and the record shows that no demand was made for the money by Judge till the latter part of the year 1866, or the first of 1867, and this suit was instituted on the 3d day of April, 1867. When the statute of limitations begins to run, so as to bar an action on the bond of the sheriff for failing to account for moneys collected by him, was considered by this court in the recent case of The State, to use of Winburn *et al.*, v. Minor *et al.*, 44 Mo. 373. It was there held that the cause of action did not accrue so as to put in motion the statute of limitations until there had been either a demand of payment by the parties in interest, or until the officer had made a proper return to the court ordering the sale of the property and showing the amount of money realized therefrom. In examining the authorities it was remarked: "In Massachusetts it is held that the cause of action does not accrue till demand of payment

is made upon him (the sheriff), and consequently that the statute of limitations only then commences running." (Weston v. Ames, 10 Metc. 244.)

So also in Louisiana and Connecticut and various other States. (14 La. 216; 1 Root, 303; U. S. Dig. 644, § 209.) But in Georgia it is held that the action accrues and that the statute begins to run in favor of the sheriff from the time the money was received by him on the execution (9 Ga. 413; Ang. on Liens, § 142 in note); while in Alabama the holding is that the cause of action accrues and the running of the statute commences from the time the fact of the collection is made to appear by the return of the execution satisfied. (Governor v. Stonum, 11 Ala. 679.) Much difficulty has been experienced in determining the time of the occurring of the action with reference to the defense of the statute of limitations. The Massachusetts rule may place the subject too much in the control of the creditor, and lead to a frittering away of the protection designed by the statute to be thrown around officers and their sureties, while the Georgia rule goes as far in the opposite direction. The Alabama rule appears to us to be the better one; and as the question is open for adjustment, we are inclined to adopt that rule here.

Now the return in this case showing the sale, the amount of money realized, and the disposition that was made thereof by the officer, was made on the 24th day of September, 1864. From that time the statute commenced running, and as more than two years — the limitation prescribed — was suffered to elapse before this suit was instituted, we think the statute constitutes an effectual bar to its prosecution.

The counsel have referred us to Pope v. Hays, 1 Mo. 450, to show that a demand was necessary before the statute would commence running. But that case is not in point. It merely shows that a strict demand is necessary before the plaintiffs will be entitled to the damages given by the statute for detaining the money. The same is now the statute law of this State (Wagn. Stat. 614, § 65), but it has no bearing upon the question as to when the limitation commences as to the principal amount. Wherefore it is the opinion of the court that the judgment be reversed; the other judges concurring.