### JENKINS *v.* INTERNATIONAL BANK.

1. Where a judgment in a State court is rendered against one shortly thereafter declared to be a bankrupt, a writ of error to that judgment brought by his assignee is a suit, within the meaning of section 5057 of the Revised Statutes.
2. The limitation of time in that section applies to a suit by the assignee to recover a debt or other moneyed obligation, as well as to a controversy concerning property or rights of property to which there are adverse claims.

ERROR to the Supreme Court of the State of Illinois.
The facts are stated in the opinion of the court.

*Mr. W. T. Burgess* for the plaintiff in error.
*Mr. Julius Rosenthal* and *Mr. A. M. Pence, contra.*

MR. JUSTICE MILLER delivered the opinion of the court.

In the course of a complicated litigation in the Circuit Court of Cook County, Illinois, between Samuel J. Walker and his creditors, it became a question whether the International Bank of Chicago, which was a party to the litigation, had a just and paramount right to certain promissory notes, secured by mortgage on real estate which it held as collateral security for debts due by him to it.

In the progress of the case the bank filed its cross-bill, alleging that it held the notes and mortgage not only as security

for the specific loan made on them at the time they were received, but for a large balance due from him, and praying for a decree for this balance.

Walker denied this, and asserted that by reason of usury the bank had been overpaid and was indebted to him. A decree was rendered in favor of the bank, finding the amounts due as follows: On the collateral notes, $23,116.66; on Walker's three principal notes to the bank, $17,092.86; on the entire indebtedness of Walker to the bank, $172,474; and adjudging that the sum to be realized from the collaterals should be first applied on the three notes amounting to $17,092.76, and the remainder on the general balance due the bank.

This decree was rendered on the 28th of February, 1878. Shortly afterwards Walker was adjudged a bankrupt. Jenkins became his assignee, and on the 5th of March, 1881, sued out a writ of error from the Court of Appeals for the First District of Illinois. The decree was there reversed. The bank having removed the case to the Supreme Court of the State, the decree of the Court of Appeals was reversed, on the ground that Jenkins had not brought his writ within the two years allowed by the bankrupt law. He thereupon brought the case here, and the only question that we can consider is the correctness of the ruling on that point.

Without searching the record for the precise date at which Jenkins became the assignee of Walker, and as such had authority to assert his rights, it is conceded that it was more than two years prior to any movement of his to bring the decree of the Circuit Court before the appellate court.

The question was raised in the argument of the case in the Supreme Court of Illinois, whether the writ of error sued out by Jenkins from the Court of Appeals was the beginning of a suit, or was so far a mere continuance of the former suit that the language of the act of Congress did not apply. In accordance with its own previous decisions, that court held that a writ of error was the beginning of a new suit. This question concerning the nature and effect of a writ of error in the courts of Illinois would seem not to be reviewable here, or, if it were, we should follow the decisions of that court on the subject.

We are, however, satisfied that, within the meaning of the

limitation clause of the bankrupt law, this first appearance of the assignee, more than two years after the decree of the court and the termination of the litigation between Walker and the bank, is a suit brought by him after that time.

There remains, however, the question, mainly argued before us, whether the suit thus commenced between the assignee and the bank involved an adverse interest touching any property or rights of property transferable to or vested in him. We can see but little reason to doubt that, so far as the controversy related to the right to the collateral securities resting on the mortgage, it was a suit touching adverse interests to property consisting of the notes and the equitable interests in the real estate mortgaged to secure them, and the adverse claims being that coming to Jenkins as assignee of Walker, and the claim of the bank.

But in that decree there was an adjudication against Walker of a debt to the bank of more than $150,000 after these collaterals had been applied in payment of the debt thus established, and this decree would be evidence, whether conclusive or not, of the right of the bank to share in the dividends of the bankrupt's estate.

So that apart from the collaterals, here was a decree for money which the assignee was interested in reversing if he came in time. We must, therefore, inquire whether, as to this personal judgment, the assignee is barred by the limitation of the bankrupt law.

This question is one which has received the consideration of many of the courts of bankruptcy in this country, but with no unanimity in the result, and its solution depends upon the construction of sect. 5057 of the Revised Statutes. It reads thus: "No suit either at law or in equity shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property, or rights of property, transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee. And this provision shall not in any case revive a right of action barred at the time when an assignee is appointed." It is asserted by the plaintiff in error that this limitation can have no application to a case

where the assignee is suing to recover on a simple debt or other money obligation, and as the sentence stands in this section there is plausibility in the argument.

It is, however, true in one sense, that debts are property, and this sense of the word is coming more into use in legislation every day. If it be permissible to hold that it was so used in this act, then the interest of the assignee in the debts due to the bankrupt is an interest adverse to the parties who have to be sued on them before they will pay, and the debts claimed to be due by the bankrupt are matters in which the interest and the duty of the assignee, when they come into contest, are adverse to the creditor. If a debt secured by a mortgage raises, as it unquestionably does when a suit is brought to foreclose it, an interest adverse to the mortgagor, or to some purchaser from him of the equity of redemption, it would be a strange construction, which requires the assignee to bring his foreclosure suit to enforce a debt well secured, within the two years, while as to a simple note, unsecured, he can sue at any time, unless barred by the statute of the State. No reason can be seen for such a discrimination.

Assuming that there is some ambiguity in sect. 5057, as we find it in the Revised Statutes, we may be permitted to examine the connection in which it stood in the original Bankrupt Act of March 2, 1867, c. 176. On reference to that it will be found that it was a part of the second section of that act, the one which conferred upon and defined the jurisdiction of the Circuit Courts in bankruptcy cases. The part pertinent to the matter in hand is this: "Said Circuit Courts shall also have concurrent jurisdiction with the District Courts of the same district of all suits, at law or in equity, which may or shall be brought by the assignee in bankruptcy against any person claiming an adverse interest, or by such person against such assignee, touching any property or rights of property of said bankrupt transferable to or vested in such assignee; but no suit at law or in equity shall in any case be maintainable by or against such assignee, or by or against any person claiming an adverse interest, touching the property and rights of property aforesaid, in any court whatsoever, unless the same shall be brought within two years from the time the cause of

action shall have accrued for or against such assignee: *Provided,* that nothing herein contained shall revive a right of acti n barred at the time such assignee is appointed."

We are not aware that it has ever been held that this section did not confer upon the assignee the right to bring a suit, whether it was at law or in equity, to recover a debt or other moneyed obligation in the Circuit Court of the district. If any such doubt was ever entertained, it was put at rest by the third section of the act of June 22, 1874, c. 390, which was an act amending the act of 1867 in many particulars.

This section declares that after the words " adverse interest " in line twelve of the section we have quoted, should be inserted " or owing any debt to such bankrupt," thereby making it clear that the jurisdiction did extend to the collection of debts owing to the bankrupt.

The limitation clause of the section, however, needed no amendment, for it applied to all suits, brought in any court, Federal or State, by or against the assignee, and using the word " or " distributively, it applied to all suits touching an interest in property transferable to the assignee, no difference who was the suitor. The reason of this is that there might be suits brought concerning property or rights of property vested in the assignee, in which he was not a necessary party, as ejectment against his tenant, or foreclosure of liens paramount to his, to which the plaintiff did not choose to make him a party. It was intended to say that in any such case, in any court, where the suit touched property or rights to property of the bankrupt passing to the assignee, it would be a good defence that it was not brought within two years after the right of action accrued.

This construction is consistent with the language of the original statute, and with the policy of it as declared by this court in *Bailey* v. *Glover*, 21 Wall. 342, and repeated in numerous cases since.

" It is obviously one of the purposes of the bankrupt law," says the court, " that there should be a speedy disposition of the bankrupt's assets. This is only second in importance to securing equality of distribution. The act is filled with provisions for quick and summary disposal of questions arising in

the progress of the case, without regard to usual modes of trial attended by some necessary delay. Appeals in some instances must be taken within ten days." To prevent the estate being wasted in litigation and delay, " Congress has said to the assignee, You shall begin no suit two years after the cause of action has accrued to you, nor shall you be harassed by suits when the cause of action has accrued more than two years against you. Within that time the estate ought to be nearly settled up and your functions discharged, and we close the door to all litigation not commenced before it has elapsed."

The language of the revision in sect. 5057, though slightly varied from that of the original act, was not intended to give a different meaning. As it is susceptible of the interpretation that no suit shall be brought by or against the assignee, or by or against any person, touching an adverse interest in property transferred to him by the assignment, which is clearly the meaning of the original act, this latter construction must be given to the section under consideration.

*Judgment affirmed.*