## MITCHELL & Another *v.* CLARK.

IN ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

Argued December 14th, 17th, 1883.—Decided March 3d, 1884.

*Jurisdiction—Limitations, Statute of.*

When a defendant in a suit pending in a State court pleads a provision of the State constitution as a defence, a judgment there overruling the plea presents no federal question to give jurisdiction to this court.

Congress has the constitutional power to prescribe the law of limitations for suits which may by law be removed into the courts of the United States ; and when Congress has exercised that power it is binding upon State courts as well as upon Federal courts. *Arnson* v. *Murphy*, 109 U. S. 238, approved.

A suit by a lessor to recover of a lessee rents which, during the rebellion, by order of the commanding general in the department where the property was situated, had been paid to the military authorities and appropriated to the use of the United States, is an action subject to the limitations prescribed by the Act of March 3d, 1863, 12 Stat. 755, and May 11th, 1866, 14 Stat. 46,

for the commencement of suits for seizures made during the rebellion by virtue or under color of authority derived from or exercised under the President or under any act of Congress. *Harrison* v. *Myer*, 92 U. S. 111, cited and approved.

In a plea setting up the defence of the limitations prescribed by the statutes of March 3d, 1863, 12 Stat. 755, and May 11th, 1856, 14 Stat. 46, it is not necessary to set forth the language of the order of the commanding general. This case distinguished from *Bean* v. *Beckwith*, 18 Wall. 510.

This was a writ of error to the Supreme Court of Missouri.

The plaintiff below sued the plaintiffs in error for rent due on a lease of two storehouses in St. Louis for the months of August, September, and October, 1862, at the rate of $583.33 per month. The defendants answered with four pleas, as follows:

"And now come said defendants, by leave of court, for amended answer to plaintiff's petition, admit the execution of said lease and the occupancy of said premises under and by virtue of the same as alleged in said petition; and defendants say that after the making of said lease, to wit, on or about the first of May, A.D. 1861, certain evil-disposed and wicked persons in the State of Missouri, and in other of the United States, did raise an insurrection and rebellion against the lawful government of the United States, and did seek by force and arms to overthrow said government, and for this purpose did raise a large force of armed men, and did incite and carry on a civil war with said government of the United States; that during all the year 1862, and for a long time prior and subsequent thereto, civil war prevailed throughout the State of Missouri, where said premises were located and where defendants and plaintiff resided; that in order to suppress said insurrection and rebellion and maintain the lawful authority of the government of the United States said government was compelled to raise, and did raise, equip, and put into the field in said State of Missouri, where said war was raging, a large army, and did place said State of Missouri and the city of St. Louis, where said premises were located and defendants resided, under military law; and the said city and county of St. Louis were under military law, and under the military control of J. M. Schofield, a Major-General of the Army of the United States, as the military commander of the District of Missouri, which embraced the entire

State of Missouri aforesaid ; that by reason of said civil war the courts of said State of Missouri were suspended and unable to perform their ordinary functions and administer the law of the land, except as they were protected and allowed to do so by the said military authorities thus in control of said State ; that in order to prosecute said civil war on behalf of the government of the United States, and put down and suppress said insurrection and rebellion, and overpower the insurgents and rebels and protect the loyal citizens of the said State of Missouri, it became and was necessary for the military authorities in control of said State of Missouri as aforesaid to take, seize, and appropriate to the public use the private property of the citizens of Missouri ; and the said military authorities who were in lawful command and control in said State, by order of said Schofield, then the lawful commanding general in said State, did seize and appropriate to the public use in suppressing said rebellion the private property of divers citizens of said State, and among other things did levy upon, seize, and appropriate to such public use the property, credits, and effects of said plaintiff, especially the rents due and owing from defendants under and by virtue of said lease of defendants in their hands for said months of August, September, and October, 1862 ; and the said defendants were compelled by the overpowering military force then in lawful control of said State to pay, and did pay long before the commencement of this suit, to wit, on or about the 24th day of November, 1862, the said rents for said months of August, September, and October, 1862, and every part thereof, to said military authorities, for and on account and as the property and effects of said plaintiff so seized and appropriated to the public use as aforesaid; that said seizure and appropriation were necessary means for carrying on said war for the suppression of said insurrection and rebellion and for the defence and protection of the loyal citizens of Missouri. Wherefore defendants say that plaintiff ought not to have or maintain his aforesaid action against them, and they pray judgment, &c.

" And for a further defence defendants say that the said rents reserved in said lease and due and owing for said months of August, September, and October, 1862, were seized in the hands of defendants and appropriated as the property of plaintiff for public use in the city of St. Louis, while said city was under military law, under the authority, or color of authority, exercised by said

General Schofield, who was then and there duly vested with the military command of said city by the President of the United States and under his authority, and said payment was made by defendants for and on account of plaintiff, as aforesaid, under said authority; and defendants plead and set up as a defence to this action the act of Congress entitled 'An Act relating to habeas corpus, and regulating judicial proceedings in certain cases, approved March 3d, 1863, and say that by reason thereof and of the payment aforesaid plaintiff ought not to have and to maintain this action, and they pray judgment, &c.

"And for a further defence defendants say that they paid the said rent for and on account of said plaintiff in the manner and for the purposes in their first plea hereinbefore stated, after the first day of January, 1861, by and in pursuance of orders received by them from the said General J. M. Schofield, who was vested with military authority by the said government of the United States to make said order and to seize and to apply to the public use the said property and effects and credits of said plaintiff; and defendants plead in bar of said action the fourth section of article eleven of the Constitution of the State of Missouri, and pray judgment, &c.

"And for a further defence to said action defendants say that the cause of action in plaintiff's petition alleged, if any such does or ever did exist, arose out of certain acts done, that is to say, out of or from an alleged failure or omission to pay the rent reserved in said lease for the months of August, September, and October, A. D. 1862, to the said plaintiff, and from a payment thereof made for and on account of plaintiff by defendants to the provost-marshal of said district of Missouri, for the public use, under and by virtue of the order and command of General J. M. Schofield, who was then in military command of the military district of Missouri, which embraced the State of Missouri; that said payment was omitted to be paid to the plaintiff, and was in fact made for and on account of the plaintiff, for the public use as aforesaid, as a necessary means of carrying on the military operations of the government of the United States against the insurgents, who were then seeking to overthrow said government in said State of Missouri, by virtue or under color of authority derived from and exercised under the President of the United States; and said cause of action, if any such there be or ever

was, arose more than two years before the commencement of this action, and said action was commenced more than two years after the passage of an act by the Congress of the United States entitled, 'An Act relating to habeas corpus, and regulating judicial proceedings in certain cases,' approved March 3d, 1863.

"And defendants set up and plead the limitations contained in said statute in bar of said actions and pray judgment."

To these defences the plaintiff demurred, and the demurrer was sustained in the court of original jurisdiction, and in the St. Louis Court of Appeals, as to the three first pleas and overruled as to the fourth. On appeal to the Supreme Court, however, the demurrer was sustained as to all the pleas, and judgment being rendered on that ruling for plaintiff in the court below and affirmed in the Supreme Court, this writ of error was sued out.

*Mr. George P. Strong* for appellants.

*Mr. George F. Edmunds* for appellee.

Mr. Justice Miller delivered the opinion of the court. After reciting the facts in the foregoing language, he continued:

The first of these defences is intended to assert the validity of the military order by which defendants under compulsion of that order paid the rent which as tenants of Clark they then owed to him, into the military chest of General Schofield, and that said order being lawful and valid is a full protection to them and a bar to this action.

We shall not undertake to decide in this case whether General Schofield had such authority as would make that payment a discharge of the debt or not.

The third plea, conceding that the order of General Schofield may not of itself be a sufficient defence to the action, invokes the aid of the fourth section of article eleven of the Constitution of the State of Missouri as making the facts set out in the first plea a good defence.

The language of this section is as follows:

"No person shall be prosecuted in any civil action or criminal proceeding for or on account of any act by him done, performed, or executed after the first day of January, 1861, by virtue of military authority vested in him by the government of the United States or that of this State to do such act, or in pursuance of orders received by him from any person vested with such authority; and if any action or proceeding shall heretofore have been or shall hereafter be instituted against any person for the doing of any such act, the defendant may plead this section in bar thereof."

This constitutional provision was adopted in 1865, and was clearly intended to protect the military officers or those acting under them from liability, civil or criminal, for acts done under their orders. Whether it covers the present case or not is not a question within our province to decide. The plea is made in a State court and sets up a defence under the State law, and however much the party may be aggrieved by that court's decision he in that plea sets up an immunity under a State law and not under the law of the United States. Of such matter this court has no jurisdiction, and we consider it no further.

The second and fourth pleas both set up the act of March 3d, 1863, 12 Stat. 755, as a defence; the second plea relying upon the fourth section of the act as a full defence to any suit at all in such case as the present, and the fourth plea setting up the specific defence of the statute of limitation found in the 7th section of that act.

The fourth section is as follows:

"That any order of the President, or under his authority, made at any time during the existence of the present rebellion, shall be a defence in all courts to any action or prosecution, civil or criminal, pending or to be commenced, for any search, seizure, arrest, or imprisonment, made, done, or committed, or acts omitted to be done under and by virtue of such order, or under color of any law of Congress, and such defence may be made by special plea or under the general issue."

And the seventh section declares:

"That no suit or prosecution, civil or criminal, shall be main-

tained for any arrest or imprisonment made, or other trespasses or wrongs done or committed, or act omitted to be done, at any time during the present rebellion, by virtue or under color of any authority derived from or exercised by or under the President of the United States, or by or under any act of Congress, unless the same shall have been commenced within two years next after such arrest, imprisonment, trespass, or wrong may have been done or committed, or act may have been omitted to have been done ; *Provided*, That in no case shall the limitation herein provided commence to run until the passage of this act, so that no party shall, by virtue of this act, be debarred of his remedy by suit or prosecution until two years from and after the passage of this act."

The act of May 11th, 1866, to amend this act, 14 U. S. Stat. 46, by its first section declares that the benefit of this defence shall extend to any acts done or omitted to be done during said rebellion by any officer or *person*, under and by virtue of any order, *written* or *verbal, general* or *special*, issued by the President or Secretary of War, or by any military officer of the United States holding command of the department, district or place within which such acts . . . were done or omitted to be done, either by the *person* or officer to whom the order was addressed, or for whom it was intended.

The act of 1863 also makes elaborate provision for the removal of this class of cases, including any act done under color of authority derived from the President, from a State court into a Federal court, which provision is also made more effectual by the act of 1866.

It is not at all difficult to discover the purpose of all this legislation.

Throughout a large part of the theatre of the civil war the officers of the army, as well as many civil officers, were engaged in the discharge of very delicate duties among a class of people who, while asserting themselves to be citizens of the United States, were intensely hostile to the government, and were ready and anxious at all times, though professing to be non-combatants, to render every aid in their power to those engaged in active efforts to overthrow the government and destroy the Union.

For this state of things Congress had provided no adequate legislation, no law by which the powers of these officers were so enlarged as to enable them to deal with this class of persons dwelling in the midst of those who were loyal to the government.

Some statutes were passed after delay of a general character, but it was seen that many acts had probably been done by these officers in defence of the life of the nation for which no authority of law could be found, though the purpose was good and the act a necessity.

For most of these acts there was constitutional power in Congress to have authorized them if it had acted in the matter in advance. It is possible that in a few cases, for acts performed in haste and in the presence of an overpowering emergency, there was no constitutional power anywhere to make them good.

But who was to determine this question? and for service so rendered to the government by its own officers and by men acting under the compulsory power of these officers could Congress grant no relief?

That an act passed after the event, which in effect ratifies what has been done, and declares that no suit shall be sustained against the party acting under color of authority, is valid, so far as Congress could have conferred such authority before, admits of no reasonable doubt. These are ordinary acts of indemnity passed by all governments when the occasion requires it.

In the legislation to which we have referred in the act of 1863, and the amendatory act of 1866, Congress seems to have well considered this subject. By the fourth section of the act of 1863 it undoubtedly intended to afford an absolute defence, as far as it had power to do so, in this class of cases.

By sections five and six it was enacted that the person sued for any of this class of acts, performed or omitted under orders of officers of the government, even when there was only color of authority, could, instead of having his case tried in a State court, where both court and jury might be prejudiced against him, remove his case into a court of the United States for trial.

That this act is constitutional, so far as it authorizes this removal, was settled in the case of *The Mayor* v. *Cooper*, 6 Wall. 247.

The defendant, however, for some reason did not attempt to remove this case into the Circuit Court of the United States, probably because the Supreme Court of the State had decided in the case of the *State* v. *Gatzweiler*, 49 Mo. 17, that the limitation clause of the act of Congress was valid and was binding on the State court.

The third measure of relief which those statutes provided for said case was this statute of limitations, found in the seventh section of the act of 1863.

This limitation of the right of action, like the right of removal, did not depend by the terms of the statute on the validity of the authority set up by the party. In one case it is obvious that that question must be inquired into after the removal. In the other, if the action had not been brought within two years, it was immaterial; for the plaintiff could not recover, however void the authority under which defendant acted.

Had Congress power to pass such a law? The suit being one which, under the act of Congress, could be removed into the courts of the United States, Congress could certainly prescribe for it the law of limitations for those courts. If for such actions in those courts, why not in all courts? Otherwise there would be two rules of limitation of actions in different courts holding pleas of the same cause.

But there are other considerations which lead to the conclusion that Congress must have the right to prescribe the rule of limitations for all courts in this class of cases.

The act complained of is done for the benefit of the government by one of its officers, or by his imperative orders, which could not be resisted. If done under a necessity or a mistake, the government should not see him suffer. In such a case as the present, where the money collected went into the military chest, and was either turned over to the treasury or used to pay the military expenses of the United States, the government is bound in equity, if not legally, to repay the defendant,

if judgment goes against him, what it received, with interest and costs. It has a right to say in such cases that the suit, which is to establish this liability, must be brought within reasonable time in whatever court it is brought, and to determine what is that reasonable time. The government which thus exposes its officers and others, acting under its compulsory exercise of power, to be sued, while not denying redress for the illegal exercise of such power, must have the authority to require that suits brought for such redress shall be commenced within reasonable time.

The question in all such cases is one that arises under the Constitution and laws of the United States, because the act questioned is one done or omitted under color of authority claimed to be derived from the government, and, therefore, involves the consideration whether such authority did in fact, or could in law, exist. It is one, consequently, that falls within the constitutional jurisdiction of the judicial power of the United States. Hence it follows that Congress might vest that jurisdiction exclusively in the courts of the United States, and might regulate all the incidents of suits brought in any jurisdiction authorized to entertain them.

It is upon this principle that the case of *Arnson* v. *Murphy*, 109 U. S. 238, was decided. The question there was whether the statute of limitations of the State or of Congress should govern, the suit having been brought to recover for duties illegally assessed. And though the action was one properly brought originally in the State court, and which might have been tried there, it was held that as the money collected by the collector had been paid into the treasury, and the United States was responsible for the judgment which might be recovered against him, and Congress having also modified the right of action which plaintiff had at common law, the provisions of the act in regard to time of commencing the action governed the case, and that they were necessarily exclusive.

The Supreme Court of Missouri in the case of *The State* v. *Gatzweiler*, 49 Mo. 17, held that the seventh section of the act of 1863 is not only valid, but is binding on the State courts. Quoting from the case of *Clark* v. *Dick*, 1 Dillon, 8, it concurs

with the Circuit Court that if Congress has the right to deter-
mine in what courts such questions must be tried, it must
necessarily have the power to regulate the remedy, including
the right to prescribe the time within which the suit must be
brought. That court further cites from the same opinion with
approval, as follows:

"Nor is the objection sound that in such cases the action, if
tried in the State courts, will be subject to the laws of limitations
prescribed by the States, while in the federal courts a different
rule would prevail. For the act of Congress by its terms applies
to all cases of the character described in the statute, and we see
no reason to limit its application to the federal courts. If Con-
gress has a right to legislate on this subject, it has the right to
make that legislation the law of all courts into which such a case
may come, and we think they have done this in the statute under
consideration."

That a similar statute in regard to suits by or against an
assignee in bankruptcy governs the State courts, see *Jenkins* v.
*The Bank*, 106 U. S. 571, and *Jenkins* v. *Lowenthal*, 110 U. S.
222.

It is no answer to this to say that it interferes with the
validity of contracts, for no provision of the Constitution pro-
hibits Congress from doing this, as it does the States; and
where the question of the *power* of Congress arises, as in the
legal tender cases, and in bankruptcy cases, it does not depend
upon the incidental effect of its exercise on contracts, but on
the existence of the power itself.

In regard to the States, which are expressly forbidden to
impair by legislation the obligation of contracts, it has been re-
peatedly held that a statute of limitation which reduces
materially the time within which suit may be commenced,
though passed after the contract was made, is not void if a
reasonable time is left for the enforcement of the contract by
suit before the statute bars that right.

Such is the case before us, for the statute leaves two years
after its passage, and two years after cause of action accrued,
within which suit could be brought.

It is said that the plea does not bring the case within the provisions of the act of Congress, because this is an action to recover of the defendant the rents which are due from him to the plaintiff on a contract in writing, and that the trespass committed on the defendant by order of General Schofield is no answer to plaintiff's right under the contract.

But we are of opinion that both the language and the spirit of the statute embrace the present case.

The plea makes it plain that it was the purpose of the Schofield order to seize the debt due from defendant to plaintiff, to confiscate it for military purposes. The sum enforced from Mitchell was the precise sum due to Clark for those rents. It was to answer Clark's obligation or default the order was made and enforced against Mitchell. He could not help himself.

It could as well be said that the garnishee in attachment is not protected when paying under the order of the court, because there was error in the proceeding against his creditor.

In all the confiscation of debts in the cases arising out of the late rebellion the same thing was done by the courts that was done here by the military power, namely, a debt due by a debtor, who was present, was seized and paid over to the United States. Can it be held that this was no proceeding against the creditor? It cannot be denied that such a procedure, if well conducted, is a good defence. It was the purpose of this statute to make it a defence here, though done without authority, if the creditor's right was not asserted by suit within two years.

The language of the statute is, that no suit shall be maintained unless brought within two years, for any wrongs done or committed or act omitted to be done, by virtue or under color of authority, derived from or exercised by, or under, the President. The act done here was the payment, under summary confiscation, of the debt due Clark to the military officer.

The act omitted was the omission by Mitchell, during all these years, under that order, to pay to Clark. The two years' statute was intended to cover the act done by Mitchell in paying according to the order of Schofield, and the omission, in refusing to pay to Clark.

The case of *Harrison* v. *Myers*, 92 U. S. 111, was a case where the rent due under a lease from an absconding malcontent, was seized by a military order. This court held that the lessor could not afterward insist on the contract. *His* property was seized, says the court, and the tenant was no longer responsible to him, who could no longer secure him possession, and as the lessee was obliged to render obedience to paramount authority, it was entirely competent for him to enter into a new contract to protect his interest.

It is said, however, that the Supreme Court of Missouri held the plea to be bad because it did not set out a copy of the order of General Schofield on which the defence is founded, either in *hæc verba* or in substance, and that this, not being a question of federal law, is sufficient to sustain the judgment of that court.

But there are several sufficient answers to this:

1. The opinion of the Supreme Court, while mentioning this objection *en passant*, does not decide that it is of itself sufficient to invalidate the plea.

2. It *does* proceed in a lengthy discussion of the plea on its merits, and rests its judgment on the ground that Congress had no power to pass the statute of limitations in question.

3. The question whether a plea sets up a sufficient defence, when the defence relied on arises under an act of Congress, does present, and that necessarily, a question of federal law; for the question is and must be, does the plea state facts which under the act of Congress constitute a good defence?

4. In this particular matter Congress made even the manner of pleading the defence a question of federal law by the provisions of the statutes on this subject.

By section four of the act of 1863, 12 Stat. 756, it is enacted that the defence which it affords may be made by special plea or under the general issue; and by section one of the act of 1866, 14 Stat. 46, that the order which shall be a sufficient defence may be written or verbal, general or special.

These provisions furnish the rules by which the manner of setting up the defence is to be governed, and they leave no doubt in our mind that the liberality which they intended to

prescribe in the matter requires that the present plea of the statute of limitations, being good in substance, is sufficient in form of statement.

If the order was verbal, if it was general, if it could be given in evidence under the general issue, it is sufficiently set out in this plea as an order of General Schofield, in command of that military department, under which defendant was compelled to pay to that officer's subordinate the rent he owed to plaintiff.

In the case of *Bean* v. *Beckwith*, 18 Wall. 510, the defendants did not rely upon the statute of limitations of 1863, but pleaded as a special defence that one of them was a provost-marshal, and the other acted under his orders; and that they both acted under the authority and by the order of Abraham Lincoln, President of the United States. But whether there was in that case a special order of the President to the provost-marshal, or whether he assumed to arrest and imprison the plaintiff under some proclamation or general order, did not appear by the plea, and as it was a case of arrest and imprisonment this court held that the authority of the defendants to make it should be specifically set forth.

That is not the present case, for the defendant here did as he was compelled to by others, and probably never saw the order under which he was forced to pay the money, and has not now within his control the order under which the officer acted. ' He has, besides, given with sufficient clearness the substance of General Schofield's order to enable plaintiff to deny its existence, if he can, or to make any other reply appropriate to the merits of the case, and if the order was verbal no better statement of it can be exacted.

We concur in the opinion of the lower courts in Missouri that the plea of the statute of limitations is a good plea and is sufficiently set out; and for the error in sustaining the demurrer to this plea

*The judgment of the Supreme Court of Missouri is reversed, and the case remanded to that court for further proceedings, not inconsistent with this opinion.*

MR. JUSTICE FIELD, dissenting.

I cannot agree with my associates in the judgment in this case.

I know of no law that was ever enacted in the United States, which would justify a military officer in enforcing the payment to him of a debt due from one loyal citizen to another loyal citizen, neither being in the military service, or residing in a State declared to be in insurrection, or in which the courts of law were not open and in the peaceful exercise of their jurisdiction. Such a law, in my opinion—I say it with respect— would dishonor the statute-book of the United States; and that which has never been enacted by legislative power can never be rightly adjudged to exist by a judicial tribunal.

The averment of the answer that the payment was enforced as a means of carrying on military operations by the United States, we know to be untrue. At that time the government appropriated the requisite funds to prosecute the war, and our legislation and history show that no plundering of loyal citizens in loyal States, nor any forced contribution from them, was ever ordered or sanctioned by public authority.

The enforced payment in question could, therefore, be no defence to the claim of the plaintiff. And it is difficult to understand how the act of Congress of March 3d, 1863, 12 Stat. 755, or the amendatory act of May 11, 1866, 14 Stat. 46, fixing a limitation to actions against military officers for certain acts done by them during the war, or against parties acting under their direction, can be invoked in this case. The fourth section of the act of March 3d, 1863, makes the order or authority of the President a defence only to actions "for any search, seizure, arrest, or imprisonment made, done, or committed, or acts omitted to be done, under and by virtue of such order or under color of any law of Congress." It has reference to acts affecting the person or such property as is subject to physical seizure. It does not apply to actions for breaches of contract between citizens in loyal States, or to any questions arising out of such contracts. Debts being intangible things, were incapable of seizure in any proper sense of that term; and the debtors were not discharged from liability because of

an unlawful exaction from them of equivalent sums. What was thus exacted could under no circumstances be regarded as anything more than a forced loan. By no possible alchemy could it be converted into the payment of their debt to another. Its effect upon others was not a matter which concerned the military officer. His object, according to the defendant's theory, was to raise funds for military operations; if so the relations of debtor to creditor were not affected by his exactions from one of them. *Williams* v. *Bruffy*, 96 U. S. 176, 187. The debt of the defendants to the plaintiff was not thereby discharged; it is still owing. It can only be discharged when paid to him or to others by his direction. Independently of this consideration, the statute cannot be construed to give protection to any one in the commission of unlawful acts. Neither the President nor Congress can confer immunity for acts committed in violation of the rights of citizens. An army in the enemy's country may do all things allowed by the rules of civilized warfare, and its officers and soldiers will be responsible only to their own government. But in loyal States, or in such parts as are not in insurrection, or declared to be so, and in which the courts are open, the rights of citizens are just as much under constitutional security and protection in time of war as in time of peace. Because civil war was raging in one part of the country the constitutional guaranties of the rights of person and property were not suspended where no such war existed. We sometimes hear the opposite doctrine advanced; but it has no warrant in the principles of the common law, or in the language of the Constitution. As I observed on a former occasion, our system of civil polity is not such a rickety and ill-jointed structure that when one part is disturbed the whole is thrown into confusion and jostled to its foundation. The existence of insurrection and war in other States than Missouri, or in parts of that State distant from St. Louis, did not suspend the Constitution or any of its guaranties in that city. No proclamation of the President had ever declared Missouri to be in a state of insurrection, and it is a matter within our judicial knowledge that St. Louis, so far from being the theatre of actual warfare, was a city where supplies were

collected for military operations in other quarters, and where the courts were in the undisturbed exercise of their jurisdiction. It is true that where rebellion exists, and the public safety requires it, the privilege of the writ of *habeas corpus* may be suspended, and to that extent one of the safeguards of the right of personal liberty may be withdrawn, but this suspension in no respect affects the claims of private citizens against each other arising out of contracts between them, or the means of their enforcement. The Constitution does not forbid, during such suspension or by reason of it, the institution of suits for such claims, or authorize Congress to forbid it.

Congress may provide for indemnifying those who, in great emergencies, acting under pressing necessities for the public, invade private rights in support of the authority of the government; but between acts of indemnity in such cases, and the attempt to deprive the citizen of his right to compensation for wrongs committed against him or his property, or to enforce contract obligations, there is a wide difference, which cannot be disregarded without a plain violation of the Constitution.

As the fourth section of the act of 1863 refers only to seizures, arrests and imprisonments committed, or acts omitted, by order or authority of the President, or under color of an act of Congress, it has no bearing upon actions for breaches of contract between citizens. The seventh section, fixing a limitation to actions for such arrests, imprisonment and other trespasses, does not therefore apply to the case before us. And the amendatory act of 1866 only extends the benefit of the limitation to actions for similar acts or omissions, when committed by a person acting under the order of the President, or the Secretary of War, or of a military commander. It does not, any more than the act of 1863, govern actions for breaches of contract between private parties. Could it be construed to embrace a case like the present, it would clearly be unconstitutional. The right of a lessor to sue his lessees for breach of contract, is in no way dependent upon any act or authority of Congress. It is a matter purely of State concern, and Congress can no more declare within what time he shall sue for his rent, than it can prescribe the court in which the action shall be

brought, or the form of the proceedings by which it shall be conducted. Its power to fix a limitation to actions can apply only to such as are in the first instance brought in the courts of the United States, and to those wherein the right or interest claimed depends upon a law of Congress. If such a law gives the right or interest, claimed, it may prescribe the time in which it shall be asserted, but not otherwise. It would hardly be pretended that Congress can enlarge the time prescribed by the State for bringing in her courts actions upon contracts; and if it cannot enlarge, how can it limit the time? Indeed, it cannot be held that Congress may interpose a limitation to the right of enforcing in the courts of a State debts existing between her citizens, unless it be also held that, as to all actions in State tribunals, it can say when they may and when they may not be brought. It will be long, I trust, before the States will become thus helpless to enforce in their own tribunals contracts between their own citizens.

The argument of the court, in its opinion, is substantially this:—an action in which a defence under an act of Congress is set up may be removed from a State court to a federal court; therefore Congress may prescribe the law of limitation for it in the latter court; and if in that court, it may in all courts, as otherwise there would be two rules of limitations of actions in different courts holding pleas of the same cause. It is easy to see that this mode of reasoning would necessarily lead to the conclusion that Congress may prescribe the limitation to all actions in State courts between citizens, because actions commenced there may be removed to a federal court when they are between citizens of different States; and, on the assumption of the argument, Congress may prescribe the law of limitation for such cases in the federal court; and if in that court, it may, says the opinion, in all courts, as otherwise there would be two rules of limitations of actions upon the same causes in different courts, one if the action remain in the State court and another if it be removed to the federal court. The length to which the argument leads proves the error of the assumption on which it is founded. The true doctrine is the reverse of this; the limitation of actions in the State courts for

the enforcement of rights which are not ·dependent upon acts of Congress or upon the Constitution, is a matter purely of State regulation, which the federal courts must follow when such actions are transferred to them. The object of the Constitution in extending the judicial power of the United States to controversies between citizens of different States, was to avoid, what was at the time of its adoption apprehended, the existence of State attachments and State prejudices, which might injuriously affect the administration of justice in the State courts against non-residents. To carry out this purpose the Judiciary Act provides for the removal to a Federal court ·of actions commenced in a State court involving such controversies. It has no other object; and the removal in no respect affects the rights of the parties, either the claims on the one hand or the defences on the other. Only the tribunal and, in some respects, the modes of procedure are changed. The limitations prescribed by the State law govern in both tribunals.