LEECH, Assignee, *v.* DAWSON and others.

*(District Court, D. Kentucky.* July 28, 1884.)

BANKRUPTCY—STATUTE OF LIMITATIONS—ACTION BY ASSIGNEE AGAINST BANKRUPT CLAIMING LAND AS HOMESTEAD.

The limitation prescribed by Rev. St. § 5057, applies to a suit by an assignee in bankruptcy against the bankrupt, to recover land fraudulently claimed and retained by the bankrupt as his homestead.

In Bankruptcy.

*Gilbert, Reed & Darby,* for defendants.

*Henry Burnett,* for complainant.

BARR, J. B. N. Dawson was adjudged a bankrupt in May, 1876, and James H. Leech, now deceased, was appointed his assignee, and the register made deed in June, 1876. The assignee, in October, 1876,

filed his report describing the land which had been set apart to the bankrupt as a homestead thus, viz.:

"Two hundred and fifty acres of land in Hopkins county, Kentucky, near the town of Dawson, upon which said B. N. Dawson and his family now reside as a homestead."

The land in controversy is within the town of Dawson, if Dawson embraces the whole of a plat of ground which the bankrupt had made some years before his bankruptcy, and under which he had sold lots. The plat had never been recorded, nor had the town of Dawson been incorporated as a town; but, as there was to be a depot on the place, the bankrupt concluded to establish a town, and had for that purpose a plat made, in which some 25 or 30 acres was laid out by streets, and lots fronting thereon. He sold small lots in 1872 or 1873, but the town did not grow, and at the time of Dawson's bankruptcy the actual town consisted of a few houses immediately around the depot. The land in controversy is not, therefore, within the town of Dawson, but "near" it, if the town of Dawson meant the actual town.

This description of the homestead must be read by the light of surrounding circumstances, and much evidence has been taken by the parties in this controversy. There is quite a conflict in this evidence on some material points. The plea of the statute of limitations is made, and that question should be disposed of first. The 5057th section, Rev. St., provides that "no suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest, touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against said assignee." This is taken from section 2 of the act of 1867, and is substantially the same upon this subject as the eighth section of the bankrupt act of 1841. The complainant alleges that the bankrupt fraudulently concealed this land from the assignee, Mr. Leech, and omitted it from his schedule, with the fraudulent intent to prevent it from being sold by him; but this is not sustained by the evidence. In the schedule made by the bankrupt, and in his claim to have the land allotted, he described his land thus:

"A tract of land of about 250 acres, with ordinary dwelling-house and usual out-houses on it, situated in Hopkins county, Ky., near the town of Dawson, which the petitioner now lives upon, occupies as a home and farm for the support of himself and family, and which the petitioner claims under the statute of Kentucky as a homestead."

We think, without going into the detail of the evidence, that the bankrupt did claim the land in controversy, and that, after the allotment of his homestead, he supposed, as did the assignee, Mr. Leech, that it embraced all of the land which he owned, except those lots which he (bankrupt) had sold and gotten back. These lots are not now in controversy. The whole of the land, including that in con-

troversy, was not worth more than $1,000, and its subsequent advance in value, caused by the discovery of mineral water in Dawson, is, of course, not to be considered. Dawson died in 1877, and after his death, his wife and family continued to live on the homestead until it was sold. The land in controversy was not sold, but was claimed in a general way by the guardian of the children of the bankrupt, and in 1882 he obtained a decree of the Hopkins circuit court to sell this land, and did sell in November, 1882. This suit was brought April 7, 1883, so that the limitation bars if it applies to this case.

In *Phelps* v. *McDonald*, 99 U. S. 306, the assignee of a bankrupt brought a suit to recover a large sum which had been awarded to the bankrupt by the British government, but to be paid by the United States. The bankrupt claimed to be a British subject, and got this award for cotton burned during our civil war. The award was made in 1873, and the suit brought in September, 1874. The bankrupt claimed under a purchase of his assets, but the court held that purchase was fraudulent and void, and that the claim was still the property of the assignee. In the course of the opinion the court say:

"The bankrupt law required that all suits by or against the assignee should be brought within two years from the time the cause of action accrued. Rev. St. p. 782, § 5057. But this provision relates to suits by or against the assignee with respect to parties other than the bankrupt. In a case like this it has no application. If this were otherwise, the cause of action here did not accrue until the award was made, and McDonald (bankrupt) set up a claim to the fund awarded. *Clark* v. *Clark*, 17 How. 315."

The case of *Clark* v. *Clark*, 17 How. 315, was a case almost identical with the *Phelps* v. *McDonald* case, and arose under the eighth section of the bankrupt act of 1841, which in terms, as to limitation, was the same as the act of 1867. In that case the language is almost identical with that used in *Phelps* v. *McDonald*. The court say:

"The interest adversely claimed, and which the statute protects if not sued for within two years, is an interest in a claimant other than the bankrupt; but supposing Ferdinand Clark had been placed in that condition, as to the fund in the treasury, by his pretended purchase of his own assets, yet as no cause of action accrued to the assignee in bankruptcy against Clark until he got possession of the money, and as he never held the fund adversely, it follows that the act does not apply; but if it did, the fund had no existence until the award was made, which was only thirty days before the suit was brought."

It will be seen that while both of the opinions state in broad terms that the act does not apply to a suit by or between the assignee and bankrupt, the question is not discussed, and in both cases the court say no cause of action accrued until the award, which was within less than the two years. Again, the court say, in the *Clark Case*, that no cause of action accrued until the bankrupt obtained the money; and as he never obtained the money, but it was still in the treasury, there was no adverse holding by the bankrupt.

In the case at bar the homestead of the bankrupt did not pass to the assignee by the register's deed. This, by the express terms of

section 5045, did not pass to the assignee. It is true that the determination of the matter of homestead and exemption is left with the assignee, subject to revision by the court; but I presume that a claim in the schedule of a specified homestead is in the nature of an adverse claim, and that, after the bankrupt's assignee has determined the question of homestead, and the bankrupt claims and has possession of land as part of his homestead, that is an actual adverse holding against the assignee. While the homestead does not pass to the assignee, still he has a right to determine whether the claim of the bankrupt is just and proper, and all else, except the exemptions and homestead, does pass to the assignee. Whatever is shown by the bankrupt not to have passed, but to be his homestead, is held adversely to the assignee after his determination is made and reported by him. If the land claimed under such circumstances is really the bankrupt's homestead, it has never passed to the assignee. If, however, there is a doubt, because of the description or other cause, the possession and claim of the bankrupt, that it is part of his homestead, is and must be an adverse claim. It will be observed that there is nothing in this section confining the limitation to suits between the assignee and persons other than the bankrupt. The language is, "between an assignee in bankruptcy and a person claiming an adverse interest."

The bankrupt is very rarely in condition to claim an adverse interest to his own assignee; but if, in fact, he does have possession, as in the case at bar, claiming it as part of his homestead which never passed to his assignee, I can see no good reason why this statute of limitation should not apply. It is not under the assignee, but adverse to him. Whatever my own opinion upon this subject might be, it would be controlled by the case of *Phelps* v. *McDonald*, 99 U. S. 298, if I construed it as a decision upon this point. The court say that "the cause of action did not accrue until the award was made, and McDonald set up a claim to the fund awarded." If this was true, of course the two-years limitation did not apply, as the award was made only one year before the suit. So, in the *Clark Case*, 17 How. 315, the award was only three months before the bringing of the suit. While it is true that in both of these cases the supreme court say that the limitation does not apply to suits between the bankrupt and his assignee, in both the court say that if he had applied, it would not bar, because the cause of action accrued within the two years. The reason for this provision of the law was to force prompt settlements of bankrupts' estates, (*Bailey* v. *Glover*, 21 Wall. 342,) and this reason applies with equal force to the prompt adjustment and final settlement of the question of homestead exemption, as any other connected with the settlement of the bankrupt's estate. The supreme court has determined recently that this limitation applies to the receiver of debts due the bankrupt's estate by third parties, thus giving a broad construction to the words "claiming an adverse interest," in this section, (*Jenkins* v. *International Bank*, 106 U. S. 574; S. C. 2 Sup. Ct.

Rep. 1,) and that court has indicated a purpose to give a liberal construction to this limitation, and apply it rigidly to all suits covered by its terms.

I have looked with diligence for a direct authority on the question under consideration, but have found none. I must therefore decide this question as I understand the language of this section, which, I think, applies to all persons claiming an adverse interest to the assignee; the bankrupt as well. There is not sufficient evidence of a fraudulent intent or a fraudulent concealment of the property in contest. Indeed, I think the proof makes it clear that the present controversy has arisen from a loose description in the schedule, and consequently in the report of the assignee of the homestead assign; but there was no intentional fraud.

The question of whether or not the land in controversy was, in fact, a part of the homestead, as recognized by the assignee, need not be decided, as I think the suit is barred by the two-years limitation.

The bill and cross-bill should be dismissed, with costs; and it is so ordered.