## In re RICHARDS.

### (District Court, W. D. Wisconsin. June 12, 1899.)

### No. 55.

1. BANKRUPTCY—PREFERENCES—DISSOLUTION OF LIENS.

Where the sureties on the official bond of an insolvent and defaulting town treasurer paid the amount of his defalcation, and received from him, with knowledge of his insolvency, a judgment note for the amount so paid, and caused judgment to be entered thereon and execution issued and levied, upon learning that there were other judgment notes of the debtor outstanding, and five days thereafter the debtor filed his voluntary petition, and was adjudged bankrupt, *held*, that the judgment and levy were void, under section 67f of the bankruptcy act of 1898, and that the property levied on, or the proceeds of its sale, should go to the trustee in bankruptcy for the benefit of the general creditors of the estate.

2. SAME—VOLUNTARY AND INVOLUNTARY CASES.

Bankruptcy Act 1898, § 67f, providing that liens obtained through legal proceedings against an insolvent debtor "at any time within four months prior to the filing of a petition in bankruptcy against him shall be deemed null and void in case he is adjudged a bankrupt," is to be construed as applying to voluntary as well as involuntary cases, inasmuch as section 1, cl. 1, declares that " 'a person against whom a petition has been filed' shall include a person who has filed a voluntary petition."

In Bankruptcy.

Reese & Carter, for bankrupt.
J. P. Smelker, for creditors.

BUNN, District Judge. This is an application by John Richards, Thomas Caygill, and Samuel Treloar to have the proceeds of the sale of a stock of goods, amounting to the sum of $1,080.92, paid over to them by the trustee, to be applied upon a judgment obtained in the state court against said bankrupt. The substantial facts are that the bankrupt, Richard T. Richards, having been elected in the spring of 1897 as town treasurer of the town of Linden, in Iowa county, obtained the consent of John Richards and Thomas Caygill to become his sureties upon an official bond which the law required him to give before entering upon the duties of his office. He held the office for one year, and at the end of his term was found to be short in his official accounts, and a defaulter upon his said bond, in the sum of about $1,350. As treasurer he had collected the taxes and had paid over the state and county tax, but not the town tax. Being unable to pay the same himself, he got his said bondsmen and one Samuel Treloar to pay the amount due to the town, and, to secure them, he gave them a judgment note

and certain mortgages upon real estate. The judgment note was for $1,400. There were also turned over, as collateral security, one-half of the book accounts belonging to the bankrupt, and a separate mortgage on the homestead given to Samuel Treloar, whose name was not on the bond, but who paid in cash $450, being one-third of the defalcation. On February 9, 1899, the payees in the note caused judgment to be entered up against the bankrupt for the amount of the note unpaid and interest, amounting to $1,137.10, issued execution thereon, and levied upon his stock of goods. The sale upon the execution was stayed by the injunctional order of this court. The reason one of the petitioners gives for entering up the judgment and issuing execution is that they had heard that Richard T. Richards, the bankrupt, had given other judgment notes, and they desired to get their judgment first, so that execution might be issued and a levy made. At the time of the execution of the note, as well as at the time of entering the judgment, Richard T. Richards was insolvent, and so known to be by the petitioners, and it is clear from the testimony that the judgment was entered and levy made for the purpose of gaining a preference over other creditors. A stipulation has been filed, in order to avoid costs, to the effect that the sheriff who made the levy and the trustee should jointly sell the property levied upon, and pay the proceeds into this court. Five days after the entry of the judgment, to wit, on February 14, 1899, Richard T. Richards filed his voluntary petition in bankruptcy, and was duly adjudged a bankrupt. The question is whether the petitioners gained a lawful preference by the lien of this execution which entitled them to the proceeds of the sale, or whether the money should go in equal proportions to the general creditors. Upon this question I entertain no doubt that the judgment and levy are void under the provisions of the bankrupt law, and that the money should go ratably to the creditors.

Section 67f of the bankruptcy act of 1898 provides as follows:

"That all levies, judgments, attachments, or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt, and the property affected by the levy, judgment, attachment or other lien shall be deemed wholly discharged and released from the same, and shall pass to the trustee as a part of the estate of the bankrupt."

Without aid derived from other parts of the law, it would be a question whether this provision applies to any but involuntary cases, as it would be awkward to say that in voluntary cases the petitioner files a petition against himself. Still it is difficult to see why congress should make any such distinction between voluntary and involuntary cases. The reason for declaring the judgment and levy void would be as cogent in the one case as the other. But, as it happens, congress has not left this provision open to construction, as it expressly provides in the very first sentence of the act that the words, "a person against whom a petition has been filed," shall include a person who has filed a voluntary petition. This would seem to leave no room for doubt about the validity of the petitioners' claim to precedence. The contention of counsel

for the petitioners, put in interrogative form in the brief, is as follows:

"Assuming, then, both that Richards was insolvent and that the petitioners knew it, the question is, can an insolvent borrow money and give a valid security? Shall advances in good faith to pay debts be protected? Will the court support securities given by an insolvent upon a bona fide advance of money to pay debts, where the transaction does not in any way injure the bankrupt or lessen his estate?"

These questions might perhaps be answered by asking another: What is a bankrupt law good for, one leading object of which is to divide the insolvent's estate equally between creditors, if one creditor, seven months after the law has gone into effect, can obtain a judgment against the debtor, levy upon and sell his entire stock of goods, and leave the other creditors helpless? Upon equitable principles, it is difficult to see what advantage these petitioners should have over other creditors. They have never sold him any goods or put a dollar into his business, and two of them, John Richards and Thomas Caygill, in paying the bankrupt's debt, discharged their own obligations. They were held as surety upon his official bond, and, with Samuel Treloar, paid each one-third the amount of the defalcation to discharge the claim of the town against them and the bankrupt jointly and severally. Treloar's name was not on the bond, and a separate mortgage of the bankrupt's homestead was given to him to secure the $450 which he advanced to pay one-third of the indebtedness to the town. What superior equity, then, have John Richards and Thomas Caygill over the other creditors who sold Richard T. Richards the goods that enabled him to carry on his business,—perhaps the very goods which were seized under the execution, and which would have been sold to pay the petitioners' debt had it not been for the injunctional order issued by this court? If it were a question of superior equities, I cannot see that the petitioners have any better or stronger footing than the other creditors. But it seems quite clear to me that, under the bankrupt law, these creditors, so far as they are unsecured, should share pro rata with the other unsecured creditors. The prayer of the petitioners is therefore denied.