### In re RHOADS.

(District Court, W. D. Pennsylvania. December 18, 1899.)

#### No. 81.

1. BANKRUPTCY—DISSOLUTION OF LIENS—VOLUNTARY AND INVOLUNTARY CASES.
   Bankr. Act 1898, § 67f, providing that liens obtained through legal proceedings against an insolvent debtor "at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged a bankrupt," is to be interpreted as applying to voluntary as well as involuntary cases, such a construction being in accordance with the general purpose and policy of the act; and especially in view of the fact that section 1, cl. 1, declares that "'a person against whom a petition has been filed' shall include a person who has filed a voluntary petition."

2. SAME—CONSTRUCTION OF STATUTE—CONFLICTING CLAUSES.
   As between the two subdivisions, "e" and "f," of section 67 of the bankruptcy act, relating to the effect of an adjudication of bankruptcy upon existing liens upon the property of the bankrupt acquired through legal proceedings within four months prior to the filing of the petition in bankruptcy, the former must give way in all cases of contradiction or irreconcilable conflict between them, and subdivision "f" must prevail, as being the later expression of the legislative will.

3. SAME—DATE OF LIEN.
   Where a creditor holding a note with warrant of attorney enters judgment thereon, and levies on the debtor's property, the latter being then insolvent, and within four months thereafter the debtor files his voluntary petition in bankruptcy, the lien acquired by such levy is dissolved by the adjudication in bankruptcy, notwithstanding the fact that the note was given more than four months before, and at a time when the maker was solvent, and even before the enactment of the bankruptcy law.

4. SAME—CONSTITUTIONAL LAW—OBLIGATION OF CONTRACTS.
   Bankr. Act 1898, § 67f, providing that an adjudication of bankruptcy shall dissolve liens obtained through legal proceedings against an insolvent debtor within four months prior to the filing of the petition in bankruptcy, though it applies to proceedings on debts contracted before the passage of the law, does not impair the obligation of existing contracts, since it affects only the remedy on the contract, not the contract itself.

In Bankruptcy. On review of questions certified by W. R. Blair, referee in bankruptcy.

W. W. Wishert, for lien creditor.
Chandler, McGill & Cunningham, for trustee in bankruptcy.
John S. Lambie, for unsecured creditors.

BUFFINGTON, District Judge. This certificate raises the question of the validity of an execution lien claimed by one Baum against the proceeds of the personal property of Rhoads, the bankrupt. The facts of the case are: On March 16, 1898, Rhoads borrowed from Baum $1,000, and gave him a note at one day, containing a warrant of attorney to confess judgment. On November 20, 1898, one Jamison entered a judgment against Rhoads in the state court, and issued execution thereon. By virtue of such execution the sheriff levied on the goods in Rhoads' store, and closed it. Baum learned what Jamison had done, and on November 23, 1898, had judgment entered on the note given to him by Rhoads, issued execution, and placed his writ in the sheriff's hands. By virtue thereof, under the Pennsylvania practice (1 Troub. & H. Prac. par. 1063), he then, and then only, acquired a lien on Rhoads' personal property. On November 28, 1898, the latter filed a petition in bankruptcy, and on December 20, 1898, was duly adjudged bankrupt. A receiver was appointed by the court, who took possession of the personalty so levied upon, subject to such lien as this court should thereafter determine the execution creditors had, sold the property, and realized a fund sufficient to pay Baum's execution, if the lien thereof be held valid. On distribution the referee held the lien was void, and, at request of Baum, has certified the question for the opinion of the court.

Baum's lien was not obtained until November 28, 1898, five days before the petition was filed, and Rhoads was insolvent when it was so obtained. Under section 67, cl. "f," of the bankrupt act, which provides "that all levies, judgments, attachments or other liens, obtained through legal proceedings against a person who is insolvent, at any time within four months prior to the filing of a petition in bankruptcy against him, shall be deemed null and void in case he is adjudged bankrupt, and the property affected by the levy, judgment, attachment, or other lien shall be deemed wholly discharged and released from the same," Baum's lien is void, unless the clause does not apply to voluntary cases, or its provisions are modified by some other section. After careful examination of the act and the conflicting decisions thereon, we are of opinion this clause covers both voluntary and involuntary cases. This conclusion is warranted both by legislative definition and by the clearly expressed general purpose of the act. Analysis of its provisions shows that its aim is to avoid preferences created after a debtor is insolvent, and enforce an equal distribution of the insolvent estate among creditors. Acts of an insolvent at variance with such object are by the law made acts of bankruptcy, and warrant the court taking possession of the estate of such insolvent and distributing it on the principle of equality the debtor has sought to defeat by preference of particular creditors. Thus, section 3, cl. "a," provides:

"Acts of bankruptcy by a person shall consist of his having * * * transferred, while insolvent, any portion of his property to one or more of his

creditors; or (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final distribution of any property affected by such preference vacated or discharged such preference."

Moreover, section 60a, defining preferred creditors, viz.: "A person shall be deemed to have given a preference if, being insolvent, he has procured or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class,"—shows that equality among creditors of the same class is the prime object of the law. If it be conceded, as we think it must be, that such is the case, how can this purpose be more effectually thwarted than by putting it in the power of the bankrupt to make or unmake preferences at will? If this clause only applies to involuntary cases, then an insolvent, by filing a voluntary petition, removes from the ban of this provision certain preferences, which, by allowing his creditors to file a petition against him, he can thereby subject to such provision, and so avoid. A construction so hostile to the general intent of the act, we could only accept under stress of language permitting no other. It will be noted that in the section defining preferences there is an absence of express provision or implication that such preference shall either be created or affected by the voluntary or involuntary character of the subsequent petition. Moreover, the indifferent character, so to speak, of petitions, in that regard, is shown by the first provision of the bill (section 1, cl. "1"); and when congress has declared that the term " 'a person against whom a petition has been filed' shall include a person who has filed a voluntary petition," is a court not alone warranted, but impliedly bound, to follow the spirit of such construction, when substantially the same language, viz. "the filing of a petition in bankruptcy against him," is used in clause "f"? To do otherwise is to sacrifice clear legislative intent to mere literalism.

But it is said such construction renders clause "c," § 67, of no effect. Suppose such be the fact. While it is the duty of courts to so construe a statute as to give every part effect, yet cases will arise where irreconcilable provisions exist, and courts are powerless to harmonize them. Such is the case in hand. It is quite clear either that clause "c" was inadvertently left in the bill after clause "f" was added, or that congress intended the act should be strengthened by the broader and more drastic provisions of the latter clause. Whether they are contradictory in every respect, it is not here necessary to decide. In some they are. Clause "c" provides that liens of a certain character shall be void, under certain specified conditions, while clause "f," in effect, provides that all the liens embraced by clause "c" shall be void, without reference to any conditions, save insolvency of the debtor, and their being obtained within four months. Where there is conflict, which clause shall prevail? In the case of Attorney General v. Chelsea Waterworks Co., Fitzg. 195, followed in Townsend v. Brown, 24 N. J. Law, 88, it was held that, where the proviso

98 F.—26

of an act of parliament is directly repugnant to the purview, the proviso shall stand, and be a repeal of the purview, as it speaks the last intention of the lawmaker; and in Puffendorf's Rules (page 152, Potter, Dwar. St.), it is laid down that:

"When we meet with a seeming repugnancy in the terms, conjectures are necessary to work out the genuine sense, by reconciling it, if possible, to those terms that seem to be repugnant. But if there be a clear, evident repugnancy, the latter vacates the former. This rule applies to the making of laws, rules, and contracts."

Now, clause "f" is not only the latest expression of the legislative will, but it is also in harmony with the general purpose of the act to avoid preferences obtained after insolvency, and an express inhibition against, and a declaration of the unlawful character of, liens which clause "c," if it sustains, does so only by implication, and not by express provision. We are therefore of opinion clause "f" must, where there is conflict, prevail, and that it is the law governing liens obtained within four months prior to the filing of the petition, through legal proceedings against an insolvent debtor. The views here expressed are supported by In re Richards (C. C. A.) 96 Fed. 937, and (D. C.) 95 Fed. 258; Manufacturing Co. v. Mitchell, 1 Am. Bankr. Rep. 701; In re Moyer (D. C.) 93 Fed. 188; In re Francis-Valentine Co., Id. 953. This clause being applicable to the present case, its terms are plain. By it, the test of the validity of Baum's execution lien was the insolvency of the debtor when it was obtained. That the note was given more than four months prior to the petition in bankruptcy, and the maker was then solvent, are immaterial, under this clause. Nor does the fact that it was given prior to the passage of the bankrupt law relieve the lien obtained after the passage of the act from the effects of its provisions. The act does not impair the obligation of existing contracts, and hence is not open to constitutional objection on that ground, but simply affects the remedy to enforce such contracts. "The difference between the obligation of a contract, and the remedy given by the legislature to enforce that obligation, exists in the nature of things. Without impairing the obligation of the contract, the remedy may certainly be modified as the wisdom of the nation shall direct." Sturges v. Crowninshield, 4 Wheat. 122, 4 L. Ed. 529.

The bankrupt act of 1867 differed widely from the present one in regard to preferences. Thus, in Clark v. Iselin, 21 Wall. 360, 22 L. Ed. 568, it is said:

"To bring the case of a judgment and execution or attachment within the thirty-fifth section of the bankrupt act, several things must concur: (1) The debtor must have procured the judgment, and attachment of his property. (2) He must have procured them within four months next prior to the filing of the petition in bankruptcy by or against him. (3) He must have been insolvent, or contemplating insolvency, at the time, and he must have procured the judgment and execution with a view to give a preference to the judgment creditor. (4) The creditor must have had a reasonable cause to believe that the debtor was insolvent, and that the judgment and execution were given in fraud of the provisions of the bankrupt act."

But the present act contains more stringent provisions. By clause "f," congress has made facts, not intentions, the test of execution lien validity. These facts are the date of the lien, and the then in-

solvency of the debtor. The language is clear, and, though its enforcement invalidates liens which we have through our professional careers enforced and regarded as matters of course, if not, indeed, of right, yet we must recognize the fact that congress, in the exercise of express constitutional warrant, has now said that all such execution liens, when obtained against an insolvent debtor within four months of bankruptcy, are invalid. The plain language of the act the referee has held to mean what it says, and rightly so; for there is no safer canon of statute interpretation than that, where the terms of a statute are plain, there is no room for a construction which makes them obscure.