## In re JACOBS.
### No. 56344.

District Court, N. D. Illinois, E. D.
Aug., 1934.

Abraham Teitelbaum, of Chicago, Ill., for petitioner.

LINDLEY, District Judge.

In the year 1932 proceedings were instituted in a court of equity in Illinois to foreclose the lien of a mortgage or trust deed securing certain bonds and incumbering the debtor's property. In those proceedings a receiver was appointed, who took and remains in possession of the debtor's property. No final decree has been entered in the cause pending in the state court.

On June 25, 1934, the debtor filed his voluntary petition under section 74 of the Bankruptcy Act, added by Act March 3, 1933, c. 204, § 1, as amended by Act June 7, 1934, c. 424, § 2 (11 USCA § 202), which was thereafter approved by the court. Upon application for a receiver and an order directing him to take possession of the property now in the custody of the receiver appointed by the court of equity, objection was made by the trustee in the trust deed and the receiver of the state court. Thereupon the court referred to the master the question of whether or not the court has, under section 74, power and authority to appoint a receiver and to order possession of the property of the debtor which is in the custody of the receiver of a court of equity, by virtue of an appointment made more than four months prior to bankruptcy proceedings, to be delivered to the receiver of the bankruptcy court. The master reported that the bankruptcy court has exclusive and paramount jurisdiction over the debtor's property wherever located, and the matter is submitted upon exceptions to that report.

It is contended under section 74 (h) of the Bankruptcy Act that the court acquires no jurisdiction over property not in the actual and constructive possession of the debtor, and that the language of subsection (m), as amended in 1934, cannot properly be construed to grant to the court of bankruptcy jurisdiction to take possession of and administer property incumbered by mortgage, not in the actual or constructive possession of the debtor, but in the possession of a receiver appointed by a court of equity more than four months prior to the filing of petition under section 74. The debtor, on the other hand, insists that there is express grant of jurisdic-

tion to the court of bankruptcy by subsection (m) as amended.

In order to reach a proper conclusion, it is necessary to consider somewhat the origin and character of jurisdiction in bankruptcy. That jurisdiction arises by virtue of a provision of the Constitution (Const. art. 1, § 8, cl. 4), and is, therefore, a paramount and exclusive jurisdiction, in so far as it may be granted to the court by the Congress. Constitutional jurisdiction, obviously, may be withheld entirely by Congress or limited by it. Previously liens obtained within four months have by legislative act been declared invalid, and the legislation has been such as to sustain the jurisdiction of the court to restrain actions in foreclosure instituted within four months prior to bankruptcy. The substantial question involved here is whether that four-month period has been extended by valid act of the Congress.

The law regarding actions to enforce liens in courts other than that in bankruptcy prior to the present amendment, and concerning the paramount and exclusive character of the latter court, is rather fully stated by the Supreme Court in Isaacs v. Hobbs Tie & Timber Co., 282 U. S. 734, 51 S. Ct. 270, 271, 75 L. Ed. 645, thus: "Upon adjudication, title to the bankrupt's property vests in the trustee with actual or constructive possession, and is placed in the custody of the bankruptcy court. Mueller v. Nugent, 184 U. S. 1, 14, 22 S. Ct. 269, 46 L. Ed. 405. The title and right to possession of all property owned and possessed by the bankrupt vests in the trustee as of the date of the filing of the petition in bankruptcy, no matter whether situated within or without the district in which the court sits. Robertson v. Howard, 229 U. S. 254, 259, 260, 33 S. Ct. 854, 57 L. Ed. 1174; Wells v. Sharp (C. C. A.) 208 F. 393; Galbraith v. Robson-Hilliard Grocery Co. (C. C. A.) 216 F. 842. It follows that the bankruptcy court has exclusive jurisdiction to deal with the property of the bankrupt estate. It may order a sale of real estate lying outside the district. Robertson v. Howard, supra; In re Wilka (D. C.) 131 F. 1004. When this jurisdiction has attached, the court's possession cannot be affected by actions brought in other courts. White v. Schloerb, 178 U. S. 542, 20 S. Ct. 1007, 44 L. Ed. 1183; Murphy v. Hofman Co., 211 U. S. 562, 29 S. Ct. 154, 53 L. Ed. 327; Dayton v. Stanard, 241 U. S. 588, 36 S. Ct. 695, 60 L. Ed. 1190. This is but an application of the well-recognized rule that, when a court of competent jurisdiction takes possession of property through its officers, this withdraws the property from the jurisdiction of all other courts which, though of concurrent jurisdiction, may not disturb that possession; and that the court originally acquiring jurisdiction is competent to hear and determine all questions respecting title, possession, and control of the property. Murphy v. Hofman Co., supra; Wabash R. Co. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Harkin v. Brundage, 276 U. S. 36, 48 S. Ct. 268, 72 L. Ed. 457. Thus, while valid liens existing at the time of the commencement of a bankruptcy proceeding are preserved, it is solely within the power of a court of bankruptcy to ascertain their validity and amount and to decree the method of their liquidation. Ex parte City Bank of New Orleans, 3 How. 292, 11 L. Ed. 603; Houston v. City Bank of New Orleans, 6 How. 486, 12 L. Ed. 526; Ray v. Norseworthy, 23 Wall. 128, 23 L. Ed. 116; In re Wilka, supra; Nisbet v. Federal Title & T. Co. (C. C. A.) 229 F. 644."

The last sentence is peculiarly enlightening, and establishes firmly that, while the bankruptcy court may recognize valid liens, it has jurisdiction, paramount to and exclusive of that of all other courts, if so authorized by Congress, in pursuance of the constitutional provisions granting such jurisdiction, to determine the validity of such asserted liens and to decree when, how, and in what court they shall be liquidated. So in the later case of Gross v. Irving Trust Co., 289 U. S. 342, 53 S. Ct. 605, 606, 77 L. Ed. 1243, 90 A. L. R. 1215: "The fact that the jurisdiction of the bankruptcy court is paramount effectually distinguishes that class of cases which hold that as between courts of *concurrent* jurisdiction property already in the hands of a receiver of one of them cannot rightfully be taken from him without that court's consent by a receiver subsequently appointed by the other court. In Buck v. Colbath, 3 Wall. 334, 341, 18 L. Ed. 257, the rule is stated to be that 'whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being; and that no other court has a right to interfere with that possession, unless it be some court which may have a direct supervisory control over the court whose process has first taken possession, *or some superior jurisdiction in the premises.'* And see Covell v. Heyman, 111 U. S. 176, 180, 4 S. Ct. 355, 28 L. Ed. 390. The present case falls within the italicized

exception, since the jurisdiction of the bankruptcy court is paramount and not concurrent."

■ Thus it will be seen that the rule that the jurisdiction of the court first taking possession of the res of an estate will persist against that of any other court must fail when a court is authorized by Congress under the basic law of the nation, the Constitution, to assert, and in pursuance of such authorization exercises, a paramount and exclusive jurisdiction —not a concurrent one.

■ The rule carried to its ultimate effect means that, if Congress sees fit, it may, in view of the paramount character of the jurisdiction in bankruptcy, go so far as to interfere with or impair contracts. Thus in Re Franklin Brewing Company, 249 F. 333, 335, Judge Hough, speaking for the Circuit Court of Appeals for the Second Circuit, said: "Congress, in the exercise of its constitutional right to establish systems of bankruptcy, may, and indeed always does, impair the obligation of contracts; a doctrine going much further than this point requires."

In Canada Southern R. R. Co. v. Gebhard, 109 U. S. 527, 3 S. Ct. 363, 371, 27 L. Ed. 1020, discussing the constitutionality of a bankruptcy statute, which bound minority bondholders by a vote of the majority, the Supreme Court said: "It is in entire harmony with the spirit of bankrupt laws, the binding force of which, upon those who are subject to the jurisdiction, is recognized by all civilized nations. It is not in conflict with the constitution of the United States, which, although prohibiting states from passing laws impairing the obligation of contracts, allows congress 'to establish * * * uniform laws on the subject of bankruptcy throughout the United States.' "

In Mitchell v. Clark, 110 U. S. 633, 4 S. Ct. 170, 175, 312, 28 L. Ed. 279, the court used this language: "It is no answer to this to say that it interferes with the validity of contracts for no provision of the constitution prohibits congress from doing this, as it does the states; and where the question of the power of congress arises, as in the legal-tender cases, and in bankruptcy cases, it does not depend upon the incidental effect of its exercise on contracts, but on the existence of the power itself."

■ Heretofore, under the Bankruptcy Act as it read before the recent amendments, Congress had seen fit to limit the bankruptcy courts' jurisdiction over property in the possession and custody of a receiver in a court of equity of either a state or the United States, to situations where such receiver had been appointed upon the ground of insolvency, within four months preceding the filing of the petition in bankruptcy. But such limitation was not of constitutional character; it was a limitation imposed by Congress in its legislative grant of bankruptcy power to the court. It has now seen fit to remove that limitation, and has issued its mandate to the bankruptcy court to exercise its jurisdiction, irrespective of the time within which the court of equity may have acquired custody of the property. Congress has in effect said to the bankruptcy court that it shall no longer be limited in its constitutional paramount jurisdiction to cases where courts of equity have previously obtained custody of property within four months, but shall exercise that jurisdiction irrespective of the date of inception of the jurisdiction of the court of equity.

It is contended, however, that section 74 as amended cannot properly be construed as granting the court jurisdiction over property in the custody of a receiver of a court of equity. This argument is based upon the premise that subsection (h) of the act provides that the terms of an extension proposal may extend the time of payment of unsecured debts and secured debts, "the security for which is in the actual or constructive possession of the debtor or of the custodian or receiver," and it is argued, therefore, that property in the possession or custody of a court of equity is not in the actual or constructive possession of the debtor. It may well be argued that the wording of the section quoted indicates an intention to grant jurisdiction to the bankruptcy court over property in the actual or constructive possession of a receiver in equity, as well as over that in the possession of the debtor, for the reason that it seems unreasonable that Congress intended to limit the jurisdiction of the court to property in the actual or constructive possession of the debtor or of the custodian or of the receiver appointed in subsection (h) of section 74.

But, granting that the latter is not the proper construction, the legislative intent there expressed was clearly superseded by a further intent clearly evinced by the language of the amendment to the Act June 7, 1934, affecting subsection (m). The act as adopted in 1933 contained the following first sentence in subsection (m): "The filing of a debtor's petition or answer seeking relief under this section shall subject the debtor and his property, wherever located, to the exclusive jurisdiction of the court in which the order ap-

proving the petition or answer as provided in subdivision (a) is filed."

On June 7, 1934, Congress amended this sentence by adding these words: "And this shall include property of the debtor in the possession of a trustee under a trust deed or a mortgage, or a receiver, custodian or other officer of any court in a pending cause, irrespective of the date of appointment of such receiver or other officer, or the date of the institution of such proceedings: Provided, That it shall not affect any proceeding in any court in which a final decree has been entered."

This language indicates clearly the intent of Congress to endow the court with paramount power in bankruptcy cases to take possession of property in which the bankruptcy has any interest, though it may be in the custody of a receiver of a court of equity. It is urged that it is illogical thus to construe the act and the effect of the amendment, but I indulge the belief that the fallacy exists, not in such interpretation, but in the interpretation contended for. It may well be that Congress might, in the interest of clearness and consistency have added language to subsection (h) similarly amending it, but failure so to do did not have the effect of making meaningless the provision added to subsection (m) by the amendment a year later. The latter is the last word of the legislative body, and should therefore control. Thus in Re Rhoads (D. C.) 98 F. 399, 401, where the court was construing (c) and (f) of section 67 (11 USCA § 107), and it was said (f) could not be interpreted as giving the wider jurisdiction contended for because of the previous limited jurisdiction in (c), the court said:

"But it is said such construction renders clause 'c,' § 67, of no effect. Suppose such be the fact. While it is the duty of courts so to construe a statute as to give every part effect, yet cases will arise where irreconcilable provisions exist, and courts are powerless to harmonize them. Such is the case in hand. It is quite clear either that clause 'c' was inadvertently left in the bill after clause 'f' was added, or that congress intended the act should be strengthened by the broader and more drastic provisions of the latter clause. Whether they are contradictory in every respect, it is not here necessary to decide. In some they are. Clause 'c' provides that liens of a certain character shall be void, under certain specified conditions, while clause 'f,' in effect, provides that all the liens embraced by clause 'c' shall be void, without reference to any conditions, save insolvency of the debtor, and their being obtained within four months. Where there is conflict, which clause shall prevail? In the case of Attorney General v. Chelsea Waterworks Co., Fitzg. 195, followed in Townsend v. Brown, 24 N. J. Law, 88, it was held that, where the proviso of an act of parliament is directly repugnant to the purview, the proviso shall stand, and be a repeal of the purview, as it speaks the last intention of the lawmaker; and in Puffendorf's Rules (page 152, Potter, Dwar. St.), it is laid down that:

" 'When we meet with a seeming repugnancy in the terms, conjectures are necessary to work out the genuine sense, by reconciling it, if possible, to those terms that seem to be repugnant. But if there be a clear, evident repugnancy, the latter vacates the former. This rule applies to the making of laws, rules, and contracts.'

"Now, clause 'f' is not only the latest expression of the legislative will, but it is also in harmony with the general purpose of the act to avoid preferences obtained after insolvency, and an express inhibition against, and a declaration of the unlawful character of, liens which clause 'c,' if it sustains, does so only by implication, and not by express provision. We are therefore of opinion clause 'f' must, where there is conflict, prevail, and that it is the law governing liens obtained within four months prior to the filing of the petition, through legal proceedings against an insolvent debtor. The views here expressed are supported by In re Richards (C. C. A.) 96 F. 935, 937, and Id. (D. C.) 95 F. 258; Manufacturing Co. v. Mitchell, 1 A. B. R. 701; In re Moyer (D. C.) 93 F. 188; In re Francis-Valentine Co. (D. C.) 93 F. 953."

Similar in effect is the case of Building Supplies Corporation v. Willcox, 284 F. 113, 116 (C. C. A. 4), as follows: "The general rule of law is (and necessarily so) that the provisions contained in the act of latest passage control as indicating the last intention of the Legislature." See, also, U. S. v. Mullendore et al., 35 F. (2d) 78 at page 80 (C. C. A. 8).

So, here, if subsection (h) and subsection (m) as amended are in conflict, the latest expression of the legislative body, namely, the amendment to subsection (m) in 1934, must control.

All the contentions here urged against the validity of the subsection giving the court of bankruptcy jurisdiction of property irrespective of the time when another court shall have acquired its custody have been urged previously in objections to the jurisdiction of the court to declare liens acquired within four

months prior to bankruptcy invalid, and in each instance the validity of such asserted jurisdiction has been upheld. The fixing of the four-month period as the time back of which the court of bankruptcy could not go to invalidate liens or disturb receivers in equity in custody of the property was an arbitrary limitation by the Congress upon the court's jurisdiction. It was not based upon lack of constitutional power, but was deemed wise upon the part of the legislators as a matter of policy. Congress has now seen fit to extend that heretofore limited jurisdiction to cases where the custody of the receiver in equity has been obtained more than four months prior to bankruptcy. The language of Judge Buffington in Re Rhoads (D. C.) 98 F. 399, 403, is most pertinent: "The language is clear, and, though its enforcement invalidates liens which we have through our professional careers enforced and regarded as matters of course, if not, indeed, of right, yet we must recognize the fact that congress, in the exercise of express constitutional warrant, has now said that all such execution liens, when obtained against an insolvent debtor within four months of bankruptcy, are invalid. The plain language of the act the referee has held to mean what it says, and rightly so; for there is no safer canon of statute interpretation than that, where the terms of a statute are plain, there is no room for a construction which makes them obscure."

Thus courts repeatedly held under provisions of the original bankruptcy act that the courts might restrain the foreclosure of a mortgage in a state court or federal court where a receiver had been appointed, if the suit had been instituted within four months prior to bankruptcy. Thus such a restraining order was approved by the Circuit Court of Appeals for the Eighth Circuit in First Savings Bank & Trust Company of Albuquerque, N. M., et al. v. Butler, 282 F. 866, 868, where the court, citing many cases, said: "Under the Constitution the jurisdiction of a court of bankruptcy in administering the estates of bankrupts under the provisions of the Bankruptcy Act is complete and exclusive, and it is not only the right, but the duty, of such courts to draw unto themselves all the property of the bankrupt estate and the determination of all claims and demands existing against the same, to the end that there may be an orderly and complete determination and settlement of the entire estate among creditors. This doctrine has been many times declared by the Supreme Court and this and other national courts of this country, as will be seen by a reference to a few of the many adjudicated cases."

In the case of In re Diamond's Estate, 259 F. 70, 73, the Circuit Court of Appeals for the Sixth Circuit had to do with the question of whether the bankruptcy court had power by summary order to compel the state court receiver to turn over property in his possession to the bankruptcy court, to await the latter's action on the question of compensation, fees, and disbursements. The question was answered in the affirmative. The court, citing various cases, said: "Upon the adjudication of bankruptcy, the District Court acquired jurisdiction essentially exclusive to administer the estate of the bankrupts generally, including the determination of claims to or liens upon their property, as well as questions of disbursement and distribution generally. * * * The property so subject to its jurisdiction included that in its constructive as well as in its actual possession. * * * This exclusive jurisdiction the bankruptcy court was not at liberty to surrender (Fidelity Co. v. Bray, supra, 225 U. S. at page 218, 32 S. Ct. 620, 56 L. Ed. 1055); and after bankruptcy supervened the state court (broadly speaking) no longer had power, unless under circumstances of emergency not applicable to the order here, to so dispose of the bankrupts' estate, in whole or in part, as to deprive the bankruptcy court of power to determine finally the propriety of such disposition."

In this connection the court considered the question of whether the receiver of a state court could be considered as an adverse holder, saying: "When bankruptcy intervened, the receiver was holding not in his own right, but merely in an official capacity and as the hand of the court, and not, we think, adversely to the bankrupts or their estate, within the meaning of the law."

In a similar case, where the court took summary jurisdiction of property in the hands of a state assignee for creditors, judge Baker in Re Smith et al. (D. C.) 92 F. 135, 138, said: "The bankruptcy act is the supreme law of the land, enacted in pursuance of an express grant of constitutional authority; and, in so far as any state law is in conflict with it, such law is suspended and remains inoperative until the federal enactment is repealed. All matters embraced in the bankruptcy act must be controlled and governed by its provisions. Among these are the right and duty of the bankruptcy court to have insolvent estates settled in and by it, under and in accordance with the provisions of the bankruptcy act; * * * and to have

liens and preferences governed by it (sections 60, 67 [11 USCA §§ 96, 107])."

And in the case of Carter v. Hobbs et al., 92 F. 594, 598, the same court in a similar situation used this language: "It would seem to be clear that the district court, when sitting in bankruptcy, has lawful jurisdiction over liens and mortgages upon the property of the bankrupt, so that it may inquire into their validity and extent, and grant the same relief which the courts of the state might or ought to grant, and that such court may do this without the consent of the secured creditor."

Discussing the jurisdiction of incumbered property in the possession of state officers, Judge Seaman in the case of In re Pittelkow (D. C.) 92 F. 901, 902, said: "Upon the general question of jurisdiction, I am of opinion that the district court is vested with exclusive jurisdiction over the property of the bankrupt, and with sufficient equity powers to have all claims by mortgagees brought in and administered; that sales may be authorized, under proper circumstances, free and clear from the mortgages, or other liens, by preserving and transferring the claims to the fund thus provided; and that the commencement of foreclosure proceedings can be restrained to that end."

The Circuit Court of Appeals for the Sixth Circuit in the case of Leidigh Carriage Co. et al. v. Stengel et al., 95 F. 637, 645, speaking through then Circuit Judge Taft, said: "The constitution of the United States, by giving to congress the power to pass uniform bankruptcy laws, gives to the courts in which congress shall vest this power paramount jurisdiction in bankruptcy proceedings. * * * Section 720, which forbids a court of the United States from enjoining proceedings in a state court, expressly excepts bankruptcy proceedings. This is the plain intimation, by federal and paramount law, that, where a federal bankruptcy court shall take jurisdiction, there the state insolvency court must yield."

In the case of In re Sage (D. C.) 224 F. 525, 539, Judge Dyer denied the adverse character of the possession of a state court receiver in possession of assets, saying: "There is a more fundamental reason why the action taken by the bank commissioner and the appointment of a receiver by the circuit court of Clark county cannot operate to deprive the petitioner of his right to administer the assets of this bank. As the Bankrupt Act confers upon courts of bankruptcy jurisdiction to adjudge private bankers bankrupt and to administer their property, this jurisdiction is not only paramount, but is exclusive, and state laws assuming to confer upon state officers or courts authority to administer the property of such bank are superseded and must give way when the Bankrupt Law is properly invoked." This case was affirmed in (C. C. A.) 236 F. 644.

To the same effect is Commercial Trust & Savings Bank v. Busch-Grace Produce Co. 228 F. 300 (C. C. A. 6th).

In each of those cases the court was dealing with the jurisdiction of the bankruptcy court where the foreclosure suit had been instituted or the custody and possession of the receiver had vested within four months prior to bankruptcy, as was the case likewise in Isaacs v. Hobbs Tie & Timber Co., and Gross v. Irving Trust Co., supra. But, if we remember that the four-month period as fixed by Congress was an arbitrary date and not one in any way limited by the Constitution, then, when Congress saw fit to extend the time, it made all cases decided under the statutory four-month provision applicable to the situation existing under the present amendment. Congress might as well have said, originally, six months or twelve months. Instead of that it said four months. Now it has removed entirely the time limitation and said that the jurisdiction should vest irrespective of the date when the court of equity may have obtained jurisdiction.

Congress, therefore, having seen fit by this amendment to grant to the court of bankruptcy the power to act, and, indeed, in effect, having issued its mandate to the court to proceed to exercise its paramount jurisdiction in bankruptcy over assets in the hands of receivers in courts of equity, irrespective of the time when such possession may have attached, and the courts having previously established beyond peradventure the all-inclusive and paramount character of such jurisdiction, including the power to gather together all of the bankrupt's property and determine what liens, if any, exist against it and how and when and where the same may be enforced, and having exhibited a purpose by this legislation to extend the bankruptcy law to new situations, the bankruptcy court, when a proper case is made, is under duty to exercise jurisdiction.

That legislative action of the remedial character of section 74 is within the constitutional power of Congress is clear from the recent case of In re Landquist et al. (C. C. A.) 70 F.(2d) 929, and In re Chicago, Rock Island & Pacific Railway Company (C. C. A.) 72 F.(2d) 443.

Accordingly the report of the master that the bankruptcy court has exclusive and paramount jurisdiction in this case, and may order the property of the debtor in the custody of the receiver of another court to be delivered to a receiver or other officer appointed by the court of bankruptcy, is approved and confirmed. All questions arising in the administration of the estate are reserved for the further action of the court.