**In re EAST CONTRA COSTA IRR. DIST.**

**No. 24962.**

District Court, N. D. California, S. D.
March 13, 1935.

A. L. Cowell, of Stockton, Cal., for petitioner.

Rogers, Clark & O'Brien, of San Francisco, Cal., for nonassenting creditors.

ST. SURE, District Judge.

I. The first ground of the motion to dismiss the petition is that it "does not state facts sufficient to entitle the petitioner to any relief herein." It is claimed that because "the petition does not state, inferentially or otherwise, that the creditors of the petitioner owning not less than thirty per centum in amount of its bonds, notes and certificates of indebtedness affected by the plan, excluding bonds, notes or certificates of indebtedness, owned, held or controlled by petitioner in a fund or otherwise, have accepted it," the petition is fatally defective.

Subdivision (a) of section 80 of the Bankruptcy Act (11 USCA § 303 (a) provides that "the petition shall state that a plan of readjustment has been prepared, is filed and submitted with the petition, and that creditors of the taxing district owning not less than 30 per centum in the case of drainage, irrigation, reclamation, and levee districts * * * in amount of the bonds, notes, and certificates of indebtedness of the taxing district affected by the plan, excluding bonds, notes, or certificates of indebtedness owned, held, or controlled by the

taxing district in a fund or otherwise, have accepted it in writing."

The petition alleges "that creditors of the Petitioner owning not less than thirty per centum (30%) in amount of the bonds affected by said Plan of Readjustment have accepted said plan in writing which said acceptances are hereto attached and marked respectively 'Exhibit B-1 to B-13' inclusive, and hereby made a part of this petition. * * *"

Considering as a whole the petition, together with the exhibits, it seems the motion must fail. "What is plainly implied in a pleading is as much a part of it as what is expressed." Western Real Estate Trustees v. Hughes (C. C. A.) 172 F. 206, 209.

There can be no doubt about the applicability of this rule as the petition is based upon a statute remedial not only in the ordinary sense of the word, but also in the sense that it is specifically designed to meet "a national emergency." Section 78 of the Bankruptcy Act (11 USCA § 301) declares: "There is hereby found, determined, and declared to exist a national emergency caused by increasing financial difficulties of many local governmental units, which renders imperative the further exercise of the bankruptcy powers of the Congress of the United States."

II. The second ground for dismissal is that the court "has no jurisdiction over the subject matter of said petition, or of the parties hereto, or to grant the relief which is prayed for." This contention is based upon subdivision (k) of section 80 of the Bankruptcy Act (11 USCA § 303 (k) which reads: "Nothing contained in this chapter shall be construed to limit or impair the power of any State to control, by legislation or otherwise, any political subdivision thereof in the exercise of its political or governmental powers, including expenditures therefor, and including the power to require the approval by any governmental agency of the State of the filing of any petition hereunder and of any plan of readjustment, and whenever there shall exist or shall hereafter be created under the law of any State any agency of such State authorized to exercise supervision or control over the fiscal affairs of all or any political subdivisions thereof, and whenever such agency has assumed such supervision or control over any political subdivision, then no petition of such political subdivision may be received hereunder unless accompanied by the written approval of such agency, and no plan of readjustment shall be put into temporary effect or finally confirmed without the written approval of such agency of such plans."

In this connection it is pointed out that "in paragraph seven of the petition it is alleged that there is no agency created under the laws of the State of California which is authorized to exercise supervision or control over petitioner's fiscal affairs and that no such agency has assumed such supervision or control." So far as the creation of the agency referred to is concerned, I think the petitioner is in error. That there is such an agency is shown by the statutes and amendments to the Codes of California (1931), c. 1073, p. 2263 et seq., and chapter 60, statutes and amendments to the Codes of California (1933), p. 355 et seq. Furthermore, it appears from a reading of section 11 of the act (St. 1931, p. 2267, as amended by St. 1933, p. 355)—an act creating the California District Securities Commission, etc.—that the petition contains an erroneous allegation wherein it is averred on page 3, paragraph 7, lines 26 and 27, "no such agency has assumed supervision or control over the fiscal affairs of petitioner." The wording of section 11, as amended in 1933, appears clearly to negative the allegation just quoted. The pertinent part of said section reads as follows: "Whenever any district has levied the annual assessment required by the California Irrigation District Act or any acts amendatory thereof or supplemental thereto and when the money derived from said assessment, together with any other revenue allocated to, payment of bond interest and principal, is insufficient to meet the bond interest or principal when due and said district defaults on its bond principal or interest, or both to the extent of not less than twenty per cent (20%) of the amount due, said defaulting district shall be subject to this section and shall be under the control and direction of the commission to the extent herein provided. Thereafter it shall continue subject to this section and to such control and direction during the effective period of this section unless and until the amount raised by its annual assessment as hereinafter provided, together with other revenue derived from any source and allocated to bond service or other outstanding obligations, shall sooner be sufficient to meet and pay off all matured and uncanceled or unrefunded obligations of such dis-

trict, bonded or otherwise, in which event it shall cease to be subject to this section and such control and direction shall terminate so long as said district does not again default as aforesaid. Upon receipt of written notice from any such district or any creditor thereof, the California Districts Securities Commission shall make such an investigation of the affairs of the district at the expense of the district as it may deem proper and for which funds are available in order to inform itself as to the financial affairs of the district and its lands, and to enable it to carry out the provisions of this section intelligently."

Petitioner contends that "whether a state agency has assumed supervision or control over an irrigation district is a question of fact and not of legal presumption," but the language of the section is a complete refutation of such contention. When the default, within the meaning of said section 11, takes place, thereupon, automatically by law, the district so in default passes "under the control and direction of the commission" in accordance with the provisions of the act, there to remain until the happening of the contingencies referred to therein. Being in such default, it would appear, at first glance, that the petition is fatally defective and that this court is without jurisdiction because the petition fails to show the written approval of the California District Securities Commission, provided for in subdivision (k) of section 80 of the Bankruptcy Act, supra. Such a holding would be correct but for a specific law of the state of California directly bearing upon section 80. In September, 1934, the Legislature of the state of California, in special session, chapter 4 (page 1 et seq.) of the statutes then enacted, passed a validating act, section 7a (page 5), which reads as follows: "Sec. 7a. Whenever any taxing district has heretofore filed or purported or attempted to file a petition under Chapter IX of the Federal Bankruptcy Statute or has taken or attempted to take any other proceedings under or in contemplation of proceedings under Chapter IX of the Federal Bankruptcy Statute, all acts and proceedings of such taxing district and of the governing board or body and of public officers of such taxing district in connection with such petition or proceedings, are hereby legalized, ratified, confirmed and declared valid to all intents and purposes and the power of such taxing district to file such petition and take such other proceedings is

hereby ratified, confirmed and declared, but all such proceedings taken after the date this act takes effect shall be taken in accordance with and pursuant to this act."

In the light of the section just quoted, and the knowledge that all matters here under consideration deal with laws, both of the United States and of the state of California, which are remedial (made so because of the emergency element which was the compelling influence in their enactment), the contention that this court is without jurisdiction because the petition lacks the "consent allegation" must fail. Where petitions of the character here involved were filed prior to September 20, 1934, as was the petition herein, the validating statute by its terms made unnecessary the obtaining the consent of the commission.

In reaching this conclusion, People v. Van Nuys Lighting District, 173 Cal. 792, 162 P. 97, Ann. Cas. 1918D, 255, has not been overlooked, and is easily distinguishable from the instant case. In the Van Nuys Case a curative statute was involved, while in the case at bar the matters involved are in their entirety remedial, recognized both by the Congress of the United States and the Legislature of the state of California, as growing out of a great national emergency.

■ III. The third ground urged for dismissal is "that said section 80 is unconstitutional and void * * * in that the proceedings purported to be authorized by said enactment are not of the character nor within the principles of bankruptcy."

The Constitution of the United States of America, article 1, § 8, cl. 4, provides: "The Congress shall have Power * * * 4 To establish * * * uniform Laws on the subject of Bankruptcies throughout the United States." "This power, like all others vested in congress, is complete in itself, may be exercised to its utmost extent, and acknowledges no limitations, other than are prescribed in the constitution." Gibbons v. Ogden, 22 U. S. (9 Wheat.) 1, 196, 6 L. Ed. 23. "The bankrupt law is said to grow out of the exigencies of commerce, and to be applicable solely to traders; but it is not easy to say who must be excluded from, or may be included within, this description. It is, like every other part of the subject, one on which the Legislature may exercise an extensive discretion." Sturges v. Crowninshield, 17 U. S. (4 Wheat.) 122, 195, 4 L. Ed. 529. "This grant of power to

the Congress to legislate on the subject is general in its terms, paramount, and unrestricted, International Shoe Co. v. Pinkus, 278 U. S. 261, at page 265, 49 S. Ct. 108, 73 L. Ed. 318, except, as stated in Silverman's Case, Fed. Cas. No. 12,855, the laws passed pursuant thereto shall be uniform throughout the United States. This uniformity is geographical and not personal. Hanover National Bank v. Moyses, 186 U. S. 181, 22 S. Ct. 857, 46 L. Ed. 1113." In re Cope (D. C.) 8 F. Supp. 778, 780. See, also, In re Reiman, 20 Fed. Cas. 490, 496, 497, No. 11,673.

Nor need one feel doubtful as to whether Congress, with regard to the particular section of the Bankruptcy Act here under consideration, went beyond the limits of the Constitution, for this provision has its foundation in " * * * a constitution intended to endure for ages to come, and, consequently, to be adapted to the various crises of human affairs", as was said by Mr. Chief Justice Marshall in McCulloch v. Maryland, 17 U. S. (4 Wheat.) 316, 415, 4 L. Ed. 579.

It would appear that every objection which is made herein concerning the constitutionality of this section of the Bankruptcy Act is fairly answered by the language used by Mr. Justice Gray in Juilliard v. Greenman (Legal Tender Cases), 110 U. S. 421, 448, 4 S. Ct. 122, 130, 28 L. Ed. 204, wherein it was said: "If, upon a just and fair interpretation of the whole constitution, a particular power or authority appears to be vested in congress, it is no constitutional objection to its existence, or to its exercise, that the property or the contracts of individuals may be incidentally affected."

█ As previously pointed out, it must be kept in mind that the statute involved was enacted to meet the conditions growing out of a great national emergency. Of course, it is elementary that "emergency does not create power," as was said by Mr. Chief Justice Hughes in Home Building & Loan Ass'n v. Blaisdell, 290 U. S. 398, 425, 54 S. Ct. 231, 235, 78 L. Ed. 413, 88 A. L. R. 1481. However, as also was said by the same learned jurist, at page 426 of 290 U. S., 54 S. Ct. 231, 235, "while emergency does not create power, emergency may furnish the occasion for the exercise of power. 'Although an emergency may not call into life a power which has never lived, nevertheless emergency may afford a reason for the ex-

ertion of a living power already enjoyed.' Wilson v. New, 243 U. S. 332, 348 [37 S. Ct. 298, 302, 61 L. Ed. 755, L. R. A. 1917E, 938, Ann. Cas. 1918A, 1024]."

It can be conceded as a matter of law that even Congress is bound by the "due process clause" of the Constitution (amendment 14, § 1). Clearly this is the rule laid down by McGehee in his "Due Process of Law Under The Federal Constitution," wherein, at pages 152 and 153, it is said: " * * * The federal government has always been restrained by the due process clause, but never by a guaranty of the sacredness of contract rights * * * as a result of the due process clause, the United States can pass no law affecting vested rights, save as the power to do so results from powers conferred either expressly or by implication in other clauses of the Constitution."

█ When the creditors involved herein entered into the contracts in question, Congress had constitutional power to enact bankruptcy legislation and it would seem that the contracts were entered into subject to the right of Congress to address legislation "to a legitimate end" so long as "the measures taken are reasonable and appropriate to that end." Home Building & Loan Ass'n v. Blaisdell, supra, page 438 of 290 U. S., 54 S. Ct. 231, 240. Although it may be argued that the legislation in question tends to destroy or greatly limit the "due process clause" of the Constitution, still the nonassenting creditors cannot be heard to assert unconstitutionality. As was said by Symes, District Judge, in discussing the provision of the Constitution relating to the subject of bankruptcies, in Re Cope, supra, pages 778, 784 of 8 F. Supp.: "This power is plenary and unlimited, and cannot be destroyed by other provisions or amendments of the Constitution." In the language of Mr. Chief Justice Fuller, speaking of the subject of bankruptcies on behalf of the Supreme Court of the United States in Hanover National Bank v. Moyses, supra, page 188 of 186 U. S., 22 S. Ct. 857, 860, "The grant to Congress involves the power to impair the obligation of contracts, * * *" and, as was said by Blatchford, District Judge, in Re Reiman, 20 Fed. Cas. 490, 494, No. 11,673: " * * * In making laws necessary and proper to carry into execution the powers vested by the constitution in the government of the United States, congress possesses the choice of means, and may use any means which are, in fact, con-

ducive to the exercise of a power granted by the constitution. U. S. v. Fisher, 2 Cranch (6 U. S.) 358, 396 [2 L. Ed. 304]; McCulloch v. Maryland, 4 Wheat. (17 U. S.) 316, 421 [4 L. Ed. 579]; The Legal Tender Cases, 12 Wall. (79 U. S.) 457, 539 [20 L. Ed. 287]."

See the case of Norman v. Baltimore & O. R. Co., 293 U. S. ——, 55 S. Ct. 407, 414, and 415, 79 L. Ed. ——, wherein Mr. Chief Justice Hughes, speaking for the Supreme Court of the United States, said: "The Court [in the Legal Tender Cases] pointed out that the exercise of the powers of Congress may affect 'apparent obligations' of contracts in many ways. The Congress may pass bankruptcy acts. The Congress may declare war, or, even in peace, pass nonintercourse acts, or direct an embargo, which may operate seriously upon existing contracts. And the Court reasoned that, if the Legal Tender Acts 'were justly chargeable with impairing contract obligations, they would not, for that reason, be forbidden, unless a different rule is to be applied to them from that which has hitherto prevailed in the construction of other powers granted by the fundamental law.' The conclusion was that contracts must be understood as having been made in reference to the possible exercise of the rightful authority of the government, and that no obligation of a contract 'can extend to the defeat' of that authority. Knox v. Lee, supra, [Legal Tender Cases], pages 549, 551 of 12 Wall. [20 L. Ed. 287]."

 It must not be lost to view that " * * * the courts sit, not to review or revise the legislative action, but to enforce the legislative will; and it is only where they find that the legislature has failed to keep within the constitutional limits, that they are at liberty to disregard its action." Cooley's Constitutional Limitations (8th Ed. 1927) vol. 1, page 335. For, as was said by Mr. Justice Story in Prigg v. Pennsylvania, 41 U. S. (16 Pet.) 345, 395, 10 L. Ed. 1060, "No court of justice can be authorized so to construe any clause of the constitution as to defeat its obvious ends, when another construction, equally accordant with the words and sense thereof, will enforce and protect them." All of which is in accord with the guiding pronouncement of Mr. Chief Justice Marshall in Fletcher v. Peck, 10 U. S. (6 Cranch) 87, 128, 3 L. Ed. 162, wherein he said: "The question, whether a law be void for its repugnancy to the constitution, is, at all times, a ques-

tion of much delicacy, which ought seldom, if ever, to be decided in the affirmative, in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."

See, also, Knox v. Lee (Legal Tender Cases), 79 U. S. (12 Wall.) 457, 531, 20 L. Ed. 287, and In re Moore (D. C.) 8 F. Supp. 393.

The motion to dismiss will be denied.